419 A.2d 44

COMMONWEALTH of Pennsylvania

v.

Lawrence Demetrius SIMONS, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 25, 1979.

Filed Feb. 15, 1980.

566

Richard A. McDaniel, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge and ROBERTS and LIPEZ, JJ.*

CERCONE, President Judge:

On May 26, 1976, a jury convicted appellant of murder of the second degree and robbery. After trial counsel filed post-verdict motions, appellant obtained new counsel, who filed supplemental post-verdict motions. After denying post-verdict motions, the trial court sentenced appellant to life imprisonment for murder and to a concurrent term of 5 to 10 years for robbery. Appellant contends that (1) the prosecutor's opening and closing statements were prejudicial; (2) the Commonwealth failed to disclose to the jury that a witness, a codefendant, was testifying for the prosecution in return for a lenient sentence upon a plea of guilty to the charges against him; (3) the trial court erred in failing to provide cautionary instructions concerning impeachment by means of prior convictions; and (4) trial counsel was ineffective. In the interests of judicial consistency with the case of a co–defendant, *Commonwealth v. Wayne Thorpe*, No. 287 January Term, 1979, we reverse and remand this case for a joint evidentiary hearing with *Com-*

---

* Justice SAMUEL J. ROBERTS of the Supreme Court of Pennsylvania is sitting by designation.

*monwealth v. Thorpe,* on the issue of whether the Commonwealth disclosed all information to the jury concerning a plea bargaining agreement with a co-defendant, Ravenell.

■ In order to avoid further litigation or confusion should the case be re–appealed to our court after the evidentiary hearing on the above–mentioned issue, we will dispose of the remaining issues here. Appellant solicited Grant Ravenell, Wayne Thorpe and Angelo Casselle to rob the victim, Zollie Perry, for whom appellant had worked at one time. One of the men shot Perry during the robbery. Ravenell was also wounded. Ravenell pleaded guilty to murder of the third degree and lesser charges and testified for the Commonwealth at appellant's trial.

During his opening statement, the prosecutor argued: ". . . Mr. Perry . . . had a wife and child and he was a business man in your community in West Philadelphia.

. . . Mr. Perry employed Mr. Simons because he thought he needed a job and he thought he could help him. And you will hear from Mr. Perry's wife that Mr. Simons was asked to leave his employment because of certain things he allegedly did dealing with the restaurant business.

. . . Mr. Simons is the architect. He drew up and designed the plan that would kill a man who had one time trusted him like an older son. Mr. Simons designed a plan in which he employed three other persons or possibly four persons to carry out his evil intent and design . . . Commonwealth will not try to tell you or prove that Mr. Simons shot him but he employed persons to do and therefore through the evidence that you will hear from the stand this man became the architect of the death of Mr. Perry.

. . . He (Mr. Simons) could not commit this crime himself but ostensibly he would issue the order.

. . . He knew one very important thing, that Mr. Perry being a hard working man, pushing himself up by

his own bootstraps, built this building, this business, and that he also carried a gun. Because in the area in which this business was in West Philadelphia, it is not the safest area in the city for merchants.

. . . He knew and yet he set out and employed Mr. Simons employed three persons to do this act, knowing that Mr. Perry had a gun and that Mr. Perry pressed would use it . . .

. . . You will hear from that man's mouth (Ravenell) that he along with a man named Mr. Thorpe, two of Mr. Simon's employees in this murder . . .

This man stood by and allowed this to occur because of one thing, the greed and lust for money . . .

Commonwealth must make these agreements with co-defendants, to allow the prosecution of the main mover, the designer, the architect of this murder. But the agreement will be up front.

These agreements are sanctioned by the American Bar Association.

This man (Ravenell) is not going to let off lightly. He is not like a man in prison when everybody in prison is innocent.

You will hear from a witness when this plan was conceived.

And now, his widow and child are left because this man decided to fight back on the streets of Philadelphia against persons like this man who pervert, who cajole and promise great wealth to other persons to rob and kill merchants in your community. You will hear of a meeting that took place prior to July 3, when this man knew what the receipts would be and that he employed one Wayne Thorpe. He employed a man by name of Cassalo and he employed a man by the name of DeWitt or DeWhite.

And Mr. Ravenell was taken in just as a lot of other persons are taken in by a person who has more persuasive power, more intelligence, and caused these persons to go

up the street which he remained in safety because he is the alleged brain of this robbery.

This man (indicating) this man led three other men into a trap, and he left them to fend for themselves. And if it wasn't for Grant Ravenell living, we wouldn't be here. If Grant Ravenell died, then no one would have been arrested, no one, and the crime that took place, the death of Mr. Perry would go out the window. He would be just another merchant killed.

You may not feel that the law is just in some matters because the Commonwealth through the evidence will ask you to determine whether the man indicating the designs, the architect of this murder, is less culpable because he did not do it himself, but set the wheels in motion, and once they are in motion, the Court will tell you there is no stopping. And then, once they are set, the motion begins.

He is responsible as if he would have pulled the hammer back on that gun, pulled that trigger and shot that man in the chest.

He was the viper in the bosom of this man who took him off the street. And he had the unmitigating gall to employ three persons to steal from the man, to bite the hand that fed this defendant."

Trial counsel did not object to these remarks and the trial court did not immediately caution the jurors about them. Appellant argues that these remarks were so prejudicial that he was deprived of a fair trial and that trial counsel was ineffective for failing to object to them.**

Some of the prosecutor's comments were justified. Evidence showed that appellant had gathered the three other men to commit the robbery and that, as one familiar with the victim's business routine, he planned the crime. Evidence also showed that, during his employment with the victim, appellant had held a position of trust and confidence,

** Represented in post–verdict proceedings and in this appeal by counsel other than trial counsel, appellant may raise ineffectiveness of trial counsel. See *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978).

in which he was responsible for important transactions and large sums of money. This evidence justified that prosecutor's argument that the victim had "trusted [appellant] like an older son." See generally, *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978) (prosecutor's comments in opening statement must be fair deductions from evidence expected to develop at trial). Appellant contends that the prosecutor's accusation that he employed the three other men is inaccurate because no evidence showed that he paid them for their services. It is apparent from other parts of the opening statement, however, that the prosecutor used the word "employ" only in the sense that the men served his purpose and acted under his discretion. The prosecutor did not assert or imply that appellant paid his colleagues to join in the robbery.

Nonetheless, some of the prosecutor's comments clearly played to the emotions of the jurors. His references to the victim's business and family were calculated to stir up sympathy for the Commonwealth's case. His designation of appellant as "the viper in the bosom of [the victim] who took him off the street," although certainly describing appellant in strong language was not so prejudicial that they deprived appellant of a fair trial. The prosecutor did not misstate the evidence or express his personal opinion of appellant's guilt, or credibility of trial strategy. See *Commonwealth v. Hughes*, supra. The court, in its charge to the jury, cautioned that the jurors need not accept the arguments of either attorney and they alone would determine the facts. Thus, the prejudice from the prosecutor's comments, if any, was slight. See *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873; *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975); *Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979). Consequently, trial counsel was not ineffective for failing to object to these comments. See *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978).

Appellant also contends that the prosecutor made prejudicial comments in his summation:

" . . . it's an awkward position that I appear in front of you today because I do not think anything I could say or do could top the performance of the witnesses that you heard yesterday.

This may appear to you to be a homicide case which is just not well reported. But believe me, that this is the type of case that is probably more important than some other homicide case which causes fear in the community for people like you to go out to these stores, to deal with people in your community, because if you keep killing off these storekeepers, you have no one left. And that's what has occurred here, because the shrewdness of this man and his plan and his scheme and his design was for only one purpose.

. . . doesn't common sense dictate to you, tell you that the Commonwealth is constrained by the amount of people who will cooperate and testify? There are no back door deals. Everything was up front. I told you from the beginning you will hear from people who have made agreements with the Commonwealth; not deals. The man pleaded guilty to third degree murder. His Honor, Judge Della Porta, will sentence him.

. . . the Commonwealth did make agreements with both men, and the agreements they made are not a breach of any ethics. They are fully condoned by the American Bar Association. For one reason: Because, in the time that we live, you don't have people that are going to go out of their way to help a man dying on the street, and you could see that from his alibi witnesses. They had a total disregard for anything.

Angelo backed out because they got his name and cards.

This man is so shrewd he out-shrewed himself.

. . . He resisted because he's tired of not resisting all these years.

If you do not believe the Commonwealth's case, then, there is no burden on this man to put a defense on. But he gets up on the stand.

. You heard it from the next witness. He was also framed. He has nothing to win or lose. So, what's the difference whether he comes in here and tells you what he thinks is the truth, or what he just made up, or I guess, what this man has done has been to manipulate. He has manipulated everyone that has taken the stand in his own defense.

. . . Grant Ravenell is remorseful. He pleaded guilty to murder three . . . .. That's sixty years— that's not been fifty-five. I'm not saying he is going to get that sentence. I have nothing to say about it. Our office has nothing to say about it.

This man is shrewd. It's a shame he doesn't put his intelligence to something more productive."

Appellant contends that trial counsel was ineffective for failing to object to these comments. We find nothing inflammatory in these remarks. Thus, counsel was not ineffective. See *Commonwealth v. Roach*, supra.

■ Appellant asserts error concerning his impeachment at trial by use of prior convictions. During cross-examination, appellant asserted that he was not a murderer or a robber. The prosecutor then asked appellant whether it was true that, a few years earlier, he had been convicted of burglary, robbery and carrying firearms. Appellant admitted that he had been convicted of those charges. Trial counsel then objected and the trial court sustained the objection. Counsel did not request an instruction to inform the jurors of the limited purpose of introduction of prior convictions for impeachment and the trial court did not give one, either at that time or in its charge. Appellant first argues that the trial court had an obligation to provide the jurors such an instruction regardless of counsel's failure to request one. There is no authority for this proposition and we think the court should not, sua sponte, interfere with counsel's management of the defense in this matter. Appellant next contends that trial counsel was ineffective for failing to request a limiting instruction. Appellant did not raise this claim in his post–verdict motions and the post–ver-

dict court did not pass on it. Consequently, the issue is not preserved for appellate review. See *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978).

■ Finally, appellant raises the issue of whether the Commonwealth disclosed to the jury all information concerning a plea bargaining agreement with a co-defendant, Ravenell. In another co-defendant's case, *Commonwealth v. Wayne Thorpe*, supra, our Supreme Court granted the Commonwealth's Petition to Remand for an Evidentiary Hearing on this identical issue. In the interests of judicial consistency, we will join in the Supreme Court's order and hold that the instant case shall also be remanded for a joint evidentiary hearing on this issue. If the lower court finds that the plea arrangement was fully disclosed, then the judgments of sentence are affirmed without prejudice to appeal from that order on that issue. If the plea agreement with Ravenell was not fully disclosed to the jury, then judgments of sentence are reversed and the case remanded for new trial.

Reversed and remanded with *a procedendo*.