492 A.2d 1119

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence Demetrius SIMONS, Appellant.**

Superior Court of Pennsylvania.

Argued July 23, 1984.

Filed May 10, 1985.

James J. Phelan, Jr., Narbeth, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, WIEAND, CIRILLO, DEL SOLE, MONTEMURO, JOHNSON and POPOVICH, JJ.

CIRILLO, Judge:

We here review a pretrial order denying appellant's motion to bar retrial on double jeopardy grounds. Such an order is immediately appealable. *Commonwealth v. Haeffner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Hoburn*, 335 Pa.Super. 536, 485 A.2d 24 (1984); *Commonwealth v. Arelt*, 308 Pa.Super. 236, 454 A.2d 108 (1982); *Commonwealth v. Yost*, 305 Pa.Super. 316, 451 A.2d 549 (1982).

This case began in July of 1975, when appellant Lawrence Demetrius Simons solicited Wayne Thorpe, Grant Ravenell, and Angelo Casselle to rob Zollie Perry. While appellant and Casselle waited in a car as lookouts, Thorpe and Ravenell, armed with pistols, approached Perry to rob him. Perry was also armed, and shot Ravenell. Thorpe then shot Perry. The four conspirators fled. Perry died from the shooting; Ravenell lived.

In separate jury trials in the Philadelphia Court of Common Pleas, first Simons, the mastermind, then Thorpe, the triggerman, were found guilty of second-degree murder and robbery. In both trials accomplices Ravenell and Casselle testified for the prosecution. After denying post-trial motions, the Honorable John A. Geisz sentenced both defendants to life imprisonment.

Simons and Thorpe appealed. Each argued on appeal that a new trial should be granted because the prosecutor had concealed from each jury the terms of a plea agreement between Ravenell and the Commonwealth. In Thorpe's case, the Pennsylvania Supreme Court remanded to the trial court for an evidentiary hearing on this issue. Our Court, which at the time had cognizance of the Simons appeal, followed suit and remanded for a joint hearing with the Thorpe case. *Commonwealth v. Simons*, 275 Pa.Super. 564, 419 A.2d 44 (1980). After hearing evidence on the

issue, Judge Geisz granted new trials to Thorpe and Simons in an opinion and order dated December 3, 1980.

Thorpe and Simons then filed motions to dismiss the charges against them, asserting that retrials would violate their rights not to be placed twice in jeopardy. In an order dated May 14, 1981, the court denied the motions. Simons here appeals from that order.

Appellant asserts his rights under the United States and Pennsylvania constitutions not to be placed twice in jeopardy for the same offense. U.S. Const. amend. V; Pa. Const. art. 1, § 10. The double jeopardy protections afforded by the federal and state constitutions generally are said to be coextensive, *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), and our state courts adopt the approach of the United States Supreme Court in double jeopardy cases, *Commonwealth v. Beaver*, 317 Pa.Super. 88, 463 A.2d 1097 (1983).

■ Generally it is not a violation of double jeopardy prohibitions to retry a defendant who obtains a new trial on his own motion, even where the motion is necessitated by prosecutorial or judicial error. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). However, where the prosecutor deliberately commits prejudicial error in order to force the defendant into a "Hobson's choice" between giving up his first jury and continuing a trial tainted by prejudice, double jeopardy considerations come into play.

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," *United States v. Jorn, supra*, [400 U.S.] at 485, 27 L.Ed.2d 543, 91 S.Ct. 547 [at 557] threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant.

*Downum v. United States,* 372 U.S. [734] at 736, 10 L.Ed.2d 100, 83 S.Ct. 1033 [at 1034].

*Id.* at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276. *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

Based on these cases, our own Supreme Court has delineated two types of prosecutorial "overreaching" that will bar retrial of a defendant: misconduct designed and intended by the prosecutor to provoke a mistrial request, and misconduct undertaken in bad faith to prejudice or harass the defendant. *Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980).

This Court amplified on the *Starks* test in *Commonwealth v. Clark,* 287 Pa.Super. 380, 430 A.2d 655 (1981). There we identified the two types of overreaching that would invoke the double jeopardy bar as: 1) prosecutorial misconduct intentionally calculated to trigger the declaration of a mistrial in order to secure a more favorable opportunity to convict an accused; and 2) prosecutorial misconduct undertaken in bad faith to harass an accused with successive prosecutions or prejudice his prospects for acquittal. This formulation of the test hews more closely to the language of *Dinitz* and *Lee,* and to their rationale of preventing the prosecutor from intentionally forcing a mistrial or putting the defendant to that "Hobson's choice" whether to give up his right to have one tribunal decide his case or whether to go to verdict with a prejudiced jury.

█ Recently the United States Supreme Court held that only prosecutorial misconduct intended to provoke a mistrial would bar retrial under federal double jeopardy principles. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Court thus repudiated the notion that there are two separate types of prosecutorial misconduct that bar reprosecution, and reintroduced an interpretation of double jeopardy principles espoused by a plurality of the Pennsylvania Supreme Court in *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978) (Nix, J., concurred specially). *See also Commonwealth v. Gravely, supra*

(plurality opinion). Consequently, as Mr. Justice Nix observed in his concurring opinion in *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983), there is no longer a Pennsylvania double jeopardy standard barring retrial in cases of prosecutorial misconduct unless the misconduct was intended to provoke the defendant to move for a mistrial. *See also Commonwealth v. Rafalko,* 335 Pa.Super. 122, 483 A.2d 986 (1984); *Commonwealth v. Riffert,* 322 Pa.Super. 230, 469 A.2d 267 (1983).

■ However, the Superior Court has said that the *Kennedy* rule applies only prospectively to appeals filed after May 24, 1982, the date of the *Kennedy* decision. *Commonwealth v. Lark,* 330 Pa.Super. 225, 479 A.2d 522 (1984); *Commonwealth v. Freedman,* 317 Pa.Super. 207, 463 A.2d 1158 (1983); *Commonwealth v. Beaver, supra; see also Rafalko (Kennedy* prospectively applied); *Riffert* (same); *but see Commonwealth v. Arelt, supra* (pre-*Kennedy* appeal; Court iterated *Kennedy* rule, but found no misconduct). We decline the Commonwealth's invitation to overrule our prior decisions in order to adopt the *Kennedy* rule retroactively. As was stated in the case upon which the Commonwealth primarily relies for its retroactivity argument: "Evenhanded decision making requires that similarly situated individuals on direct appeal be treated the same." *Commonwealth v. Cabeza,* 503 Pa. 228, 232, 469 A.2d 146, 148 (1983) (quoting *Commonwealth v. Brown,* 494 Pa. 380, 385, 431 A.2d 905, 908 (1981)). Simons, who filed his appeal in 1981, is situated similarly to those other individuals whose appeals arose in this State before *Kennedy,* and whose cases were judged by our appellate courts under the pre-*Kennedy* rule. In the interest of fairness and orderliness in our decision making, we will judge Simons's case also under the pre-*Kennedy* rule.

The misconduct claimed to raise a double jeopardy bar is that over the course of Simons's trial assistant district attorney David Berman concealed a deal between the Commonwealth and its witness, Grant Ravenell. Ravenell already had pled guilty to third-degree murder, robbery, and

conspiracy, and was in jail awaiting sentencing. In his opening statement to the jury Berman admitted that the Commonwealth had had to make an agreement for Ravenell's testimony, but denied that there was a sentencing deal, and stated that sentencing was up to the court. Ravenell, on both direct and cross-examination, stated that there was no sentencing deal, that he had been told the maximum sentence he could receive was fifty-five years, and that he expected to go to jail.

In fact, as it later turned out, the Honorable Armand Della Porta sentenced Ravenell to eleven to twenty-three months in prison, county time, with ten years' psychiatric probation to follow, on the strength of a Commonwealth sentencing recommendation that Judge Della Porta apparently knew about at the time of Ravenell's guilty plea. Furthermore, after Ravenell concluded his testimony in the Thorpe trial and the defense attorneys had left the courtroom, Berman moved that Ravenell be released immediately on his own recognizance, and Judge Geisz granted the motion.

After reviewing this case pursuant to our remand order, Judge Geisz found that the available evidence indicated that the Commonwealth did have a sentencing agreement with Ravenell which it failed to disclose at the Simons trial. The judge therefore ordered the new trial which Simons now claims is barred.

It is immediately obvious that the first type of prosecutorial misconduct identified in *Starks* —that designed to provoke the defendant to request a mistrial—is completely absent from this case. The prosecutor's very act of concealment evidenced his intention not to provoke a mistrial request, and virtually guaranteed that none would be made.

Appellant maintains, however, that concealment of the deal constituted the second type of overreaching identified in *Starks*, "prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant." 490 Pa. at 341, 416 A.2d at 500. Appellant argues that Berman concealed the deal intentionally, in bad faith, and in order to prejudice

the defendant, and that therefore reprosecution is barred. We cannot agree with appellant's simplistic interpretation of *Starks*.

*Starks* must be read in light of the guarantees embodied in the constitutional provision which it interprets. The Double Jeopardy Clause protects against oppressive governmental acts that threaten the individual's right to be tried only once for one offense; however, it clearly does not establish a general remedy for bad faith misconduct by prosecutors. The task is to determine when prosecutorial misconduct amounts to "overreaching" sufficient to bar retrial on double jeopardy grounds. Commentators on the pre-*Kennedy* line of cases offer the theory that the Double Jeopardy Clause bars retrial only in those instances where the defendant's interest in the finality of the proceeding against him is overcome by prosecutorial error that might be used to manipulate that interest. Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Sup. Ct.Rev. 81, 92–97. Thus, prosecutorial misconduct runs afoul of the Double Jeopardy Clause only where it gives the prosecutor an opportunity to manipulate the defendant's right to have his guilt or innocence decided in one proceeding. The prosecutor can create such an opportunity for manipulation by intentionally erring to induce an abortion of a first trial that is not going favorably for the prosecution; or by introducing an error that will force the defendant to have his case decided by a prejudiced fact finder, if the defendant insists on going through with the first trial despite the error.

This theory of double jeopardy protections in the context of prosecutorial error illuminates the meaning of "overreaching" as the Supreme Court used that term in *Starks*. "Overreaching" is misconduct designed 1) to provoke a mistrial to obtain a more favorable opportunity to convict the defendant; or 2) to *harass* the defendant with a threat of multiple prosecutions or to *prejudice* his prospects for acquittal before the first tribunal convened to try him in a way that forces a "Hobson's choice" between seeking a

new trial or proceeding to verdict before a prejudiced fact finder.

In *Oregon v. Kennedy,* the United States Supreme Court chose to limit the availability of relief under the Double Jeopardy Clause by declaring that only misconduct *intended* to provoke a mistrial would constitute a bar to reprosecution. *Kennedy* thus narrowed the scope of double jeopardy review to the first type of "overreaching" identified by the *Starks* Court. In this regard, the expansive reading of *Kennedy* advanced in the Dissenting Opinion of Del Sole, J.—that it bars retrial in any case where there has been "intentional misconduct," At 303–306 is unsupportable. *Kennedy* quite explicitly decided that only misconduct undertaken with the *specific* intent to precipitate a mistrial will raise a double jeopardy bar. So much is clear from the plain language of *Kennedy*'s holding:

> we do hold that the circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

456 U.S. at 679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427. The conclusion that *Kennedy* does not mandate double jeopardy relief in every instance of intentional misconduct is also inherent in the Supreme Court's rejection of the more general "bad faith" prong of the pre-*Kennedy* double jeopardy standard. *See* Black's Law Dictionary 127 (5th ed. 1979) ("Bad faith"). After *Kennedy,* the bad faith of the prosecutor in committing prejudicial error is relevant only to establish whether he intended to abort the trial.

Even before *Kennedy,* however, the Supreme Court never construed the Double Jeopardy Clause as a general safeguard against intentional prosecutorial misconduct; rather, the focus of the pre-*Kennedy* decisions was on that type of misconduct undertaken with the bad faith intent to frustrate the defendant's right to be tried only once. The Court recognized that even if the prosecutor did not specifi-

cally intend for his deliberate acts to abort the trial, he could still compromise the rights secured by the Double Jeopardy Clause by intentionally injecting error into the case to force the defendant to choose between opting for a mistrial or obtaining a verdict from a tainted jury, thereby "harassing" the defendant with the threat of multiple prosecutions. *See Dinitz* and *Lee, supra; see also Oregon v. Kennedy,* 456 U.S. at 689, 102 S.Ct. at 2096, 72 L.Ed.2d at 433 (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., concurring in the result) ("a prosecutor may be interested in putting the defendant through the embarrassment, expense, and ordeal of criminal proceedings even if he cannot obtain a conviction.... [W]ith the purpose of harrassing the defendant the prosecutor may commit repeated prejudicial errors and be indifferent between a mistrial or mistrials and an unsustainable conviction or convictions.").

■ Of course, it is not always easy to discern or prove that the prosecutor erred with such a purpose in mind. However, the kind of error that can be used to subvert the defendant's double jeopardy rights typically will create a positive prejudicial inference against the defendant in the eyes of the fact finder, and will occur under circumstances where its prejudicial impact on the fact finder will be apparent to the defense. Only thus may the prosecutor force the defendant into an untenable choice between asking for a mistrial, thus forfeiting his right to have his guilt or innocence decided in one proceeding, or accepting the prejudicial effect of the error, thus allowing his guilt or innocence to be decided by a fact finder tainted by prejudice. The elements of such a "Hobson's choice" are consistently present in the Pennsylvania decisions inquiring into the double jeopardy implications of prosecutorial or judicial error. *See, e.g., Commonwealth v. Virtu,* 495 Pa. 59, 432 A.2d 198 (1981); *Commonwealth v. Lee,* 490 Pa. 346, 416 A.2d 503 (1980); *Commonwealth v. Starks, supra; Commonwealth v. Gravely, supra; Commonwealth v. Potter, supra; Commonwealth v. Lark, supra; Commonwealth v. Riffert, supra; Commonwealth v. Freedman, supra;*

*Commonwealth v. Beaver, supra; Commonwealth v. Lafferty,* 315 Pa.Super. 241, 246, 461 A.2d 1261, 1263 (1983); *Commonwealth v. McClain,* 309 Pa.Super. 163, 454 A.2d 1134 (1983); *Commonwealth v. Yost, supra; Commonwealth v. Miele,* 300 Pa.Super. 197, 446 A.2d 298 (1982); *Commonwealth v. Owens,* 299 Pa.Super. 1, 445 A.2d 117 (1982); *Commonwealth v. Custor,* 296 Pa.Super. 235, 442 A.2d 746 (1982); *Commonwealth v. Anderson,* 294 Pa.Super. 1, 439 A.2d 720 (1981); *Commonwealth v. Clark, supra. See also Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984) (condemning "prosecutor's blatant and inexcusable inattention" in allowing box labeled "Police shooting, homicide of police officer" to be brought into courtroom). We note that in *Virtu, supra,* one of two cases in which the Pennsylvania Supreme Court found misconduct egregious enough to bar retrial on double jeopardy grounds, the prosecutor had "prejudice[d] the accused in the presence of the jury" by calling a witness to the stand whom he knew would invoke his fifth amendment privilege not to testify. 495 Pa. at 69, 432 A.2d at 203–04. *See also Commonwealth v. Warfield,* 424 Pa. 555, 227 A.2d 177 (1967) (prosecutor deliberately caused mistrial to appeal question of law to Supreme Court).

 We hold that prosecutorial error amounts to "overreaching" so as to bar retrial on double jeopardy grounds only where it is designed to force the defendant into a choice between proceeding to verdict before a tainted fact finder, and giving up his right to be tried only once. It is evident that the prosecutor's concealment of a sentencing deal with Simons's codefendant did not force Simons into such an untenable choice. The act of concealment did not prejudice Simons in the eyes of the jury, but was designed only to direct their animosity away from co-defendant Ravenell. Furthermore, the defense remained oblivious to its grounds for a new trial until long after the jury had performed its function. Clearly the prosecutor did not act with the bad faith intent to harass Simons with the threat

of multiple prosecutions or prejudice his prospects for acquittal before the first jury in order to force a "Hobson's choice" between seeking a mistrial or proceeding to verdict before a prejudiced jury. Instead, the prosecutor obviously intended that the defendant should remain unaware of the grounds for a new trial, and that the defendant's first trial would be his last.

We by no means suggest that concealed misconduct is somehow preferable to blatant misconduct. The prosecutor's act of concealment was deplorable and certainly such misconduct must be discouraged in a quasi-judicial officer whose sworn duty is to seek justice rather than narrowmindedly pursue convictions. Appellant is entitled to relief, which he received in the form of a new trial. However, in deciding whether we must go that further step and discharge appellant on double jeopardy grounds, we must remember the admonition of the Supreme Court in *United States v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 669, 66 L.Ed.2d 564, 569 (1981): "The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." *See also Commonwealth v. Torrez*, 335 Pa.Super. 612, 485 A.2d 63 (1984) (discharge inappropriate remedy for failure of prosecutorial officers to conduct court-ordered lineup). The Commonwealth was denied the fruits of its transgression when the tainted verdict of guilty was struck down by the grant of a new trial. The question before us is not whether the prosecutor's act was wrong; it has already been decided that it was. The question is whether the prosecutor's act was of the type which the Double Jeopardy Clause was meant to prevent; this we hold it was not.

■■■ The prosecutor did not deliberately overreach the defendant with the threat of multiple prosecutions, nor intentionally subvert the defendant's right to be tried only once. Accordingly, the extraordinary remedy of discharge is not warranted in this case, and we hold that appellant's

double jeopardy rights would not be violated by retrial. The trial court's award of a new trial adequately remedies the prosecutor's wrongful concealment of the deal with Ravenell. *See Commonwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978).

Finally, we are constrained to correct a misimpression created in the Dissenting Opinion by Del Sole, J., that our holding has somehow restricted double jeopardy relief to cases where a mistrial based on prosecutorial misconduct has been granted during the trial. Judge Del Sole states that "if the Majority's view is adopted, a trial court when faced with a motion for mistrial, might be reluctant to grant same since it would give rise to a double jeopardy claim while a conviction and new trial would not." At ——. This statement reflects a misreading of our opinion. We neither expressly nor impliedly distinguish prosecutorial misconduct met with the immediate declaration of a mistrial from prosecutorial misconduct remedied on appeal from a conviction. Our analysis focuses solely on whether misconduct by the prosecutor was designed to vitiate the defendant's constitutional protection against double jeopardy. Any fear that trial judges will be loath to grant meritorious mistrial requests because of our holding is therefore completely unfounded. *See Commonwealth v. Potter, supra* (same double jeopardy standard applies whether or not mistrial is granted).

The pretrial order denying the motion to bar reprosecution is affirmed.

BROSKY, J., joins, but also files a concurring opinion.

WIEAND, J., files a concurring opinion.

SPAETH, President Judge, files a dissenting opinion.

DEL SOLE, J., files a dissenting opinion, in which POPO-VICH, J., joins.

BROSKY, Judge, concurring:

I join in the majority's well-reasoned treatment of the merits of this case. I write simply to also concur in the majority's implied holding that appellant did not waive the issue treated herein by raising it for the first time in a pre-trial motion to dismiss filed in conjunction with his second trial.

Appellee, the Commonwealth contends that appellant has waived his double jeopardy claim by failing to raise it prior to his being granted a new trial. It is clear from the facts recited by the majority that appellant raised his double jeopardy claim for the first time in a pre-trial motion after the court below had granted him a new trial. Although the majority does not expressly address the Commonwealth's argument, it does consider the merits of appellant's claim.

Therefore, the conclusion is inescapable that the majority is holding that the procedure followed by appellant does not result in waiver of a double jeopardy claim. I agree with this holding on the basis of the rationale of Justice Roberts in *Commonwealth v. Hallowell*, 497 Pa. 203, 439 A.2d 1140 (1981) (Opinion in Support of Reversal).

> Our present practice, with which appellant has fully complied, requires a defendant to raise before retrial a claim of overreaching, and permits a pre-retrial appeal from an adverse determination. *See Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). This practice provides an effective, fair and reasonable vehicle for prompt adjudication of claims of prosecutorial overreaching, assuring proper development of the record necessary to adjudicate such a claim. *See e.g., Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980) (pre-retrial evidentiary hearing held pursuant to present procedure facilitated resolution of overreaching claim). Moreover, this practice assures that the issue of overreaching is ripe: the Commonwealth is seeking to retry the defendant, and the defendant is claiming that retrial will place him twice in jeopardy.

*Id.*, 497 Pa. at 214, 439 A.2d at 1145.[1]

On this basis, I would agree with the majority's implicit holding in this case; namely that the procedure followed by appellant does not result in waiver of a double jeopardy claim.

WIEAND, Judge, concurring:

I concur in the holding of the majority that retrial is not barred by principles of double jeopardy. I write separately because of my disagreement with language in the majority opinion to the effect that the decision of the United States Supreme Court in *Oregon v. Kennedy*[1] must be given prospective application only.

The Supreme Court in *Kennedy*, although acknowledging the existence of confusion because of language in prior decisions, determined to clarify the "confusion" by stating the law to be that " 'reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the Government did not deliberately seek to provoke the mistrial request.' " *Id.* at 678 n. 8, 102 S.Ct. at 2090–2091 n. 8, 72 L.Ed.2d at 426 n. 8, quoting *United States v. DiFrancesco*, 449 U.S. 117, 130, 101 S.Ct. 426, 434, 66 L.Ed.2d 328, 341 (1980). This decision did not represent a clear break with precedent. The Court did no more than clarify prior decisional language while applying settled precedents to the facts of the case then before it. Because the decision in *Kennedy* did not in fact alter existing precedent, it may be applied retrospectively to all cases pending on direct appeal. *United States v. Johnson*, 457 U.S. 537, 548–549, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202, 213 (1982). See: *In re V.G.E.*, 452 A.2d 1195 (D.C.1982). See also: *Commonwealth v. Price*, 318 Pa.Super. 240, 464 A.2d 1320 (1983) (*Illinois v.*

1. Justice Roberts' opinion was joined by two of the five other members of the Court. Justice Nix, in his Opinion in Support of Affirmance, did not comment upon the waiver issue, but did reach the merits of the case. Justices Larsen and Kauffman, in their Opinion in Support of Affirmance would have found the appellant's double jeopardy claim to have been waived.

1. 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

*Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 to be applied retrospectively to all cases on direct appeal at time decision rendered).

The double jeopardy protections afforded by federal and state constitutions are coextensive. *Commonwealth v. Hude,* 492 Pa. 600, 613, 425 A.2d 313, 320 (1980). The courts of Pennsylvania have generally followed decisions of the Supreme Court of the United States in interpreting the double jeopardy clause of the state constitution. *Commonwealth v. Beaver,* 317 Pa.Super. 88, 100, 463 A.2d 1097, 1103 (1983). This Court has decided, subject to final review by the Supreme Court, that it will apply the double jeopardy parameters defined in *Oregon v. Kennedy, supra,* to cases arising under the state constitution. *Commonwealth v. Beaver, supra,* 317 Pa.Superior Ct. at 101, 463 A.2d at 1104, citing *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983) (Nix, J., concurring). I agree that we should do this. Because I am unable to discern any valid reason for denying retrospective application of those parameters, however, I would hold that *Oregon v. Kennedy, supra,* is applicable equally to all cases, whether arising before or after the date thereof. We would thus achieve uniformity without placing any defendant in danger of discernible injustice or hardship.[2]

SPAETH, President Judge, dissenting:

If this case were controlled by *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), retrial would not be barred, for the prosecution did not "intend[ ] to provoke [appellant] into moving for a mistrial." To the contrary, the prosecutor intended, by concealing his misconduct, to *preclude* appellant from moving for a mistrial. *Kennedy,* however, does not control, for it is not to be

---

**2.** My research has failed to disclose any case in which a second trial was held to be barred by prosecutorial misconduct resulting in a mistrial or the award of a new trial where such misconduct was not prompted by an intent to abort the trial for the purpose of enhancing the chances for obtaining a conviction before a different jury. In general, the award of a new trial has been held to be an adequate response to prosecutorial misconduct.

applied retroactively. *Commonwealth v. Beaver*, 317 Pa. Super. 88, 102, 463 A.2d 1097, 1104 (1983). The case that does control is *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), which *Kennedy* overruled. Under *Dinitz*, retrial is barred by "prosecutorial misconduct undertaken in bad faith to prejudice or harass" the defendant. Since that is precisely the sort of prosecutorial misconduct that occurred here, we should hold that retrial is barred and reverse the order of the trial court permitting retrial.

In *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Court held

> ... that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679, 102 S.Ct. at 2091.

I believe that *Kennedy* means what it says, and for that reason I cannot join Judge DEL SOLE, although I agree with much of what he says.[1] Here, the prosecutor did not "intend[ ] to provoke [appellant] into moving for a mistrial." His intention was just to the contrary. Usually, of course, intention must be inferred from conduct. The only inference to be drawn from the prosecutor's conduct here is that he did not want appellant to know about the sentencing agreement with Ravenell. In other words, he hoped the trial would proceed smoothly without interruption to a guilty verdict: he intended, by concealing his misconduct, to *preclude* appellant from moving for a mistrial. Accordingly, if *Kennedy* controls this case, retrial is not barred.

---

1. I note, however, that there is support for Judge DEL SOLE's reading of *Kennedy* in Justice POWELL's concurring opinion, which characterizes the holding of the majority as follows: "... the *intention* of a prosecutor determines whether his conduct, viewed by the defendant and the court as justifying a mistrial, bars a retrial of the defendant under the Double Jeopardy Clause." 456 U.S. at 679, 102 S.Ct. at 2091.

However, *Kennedy* does not control this case. To explain this conclusion, it is necessary to consider *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). *Dinitz* held:

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant

424 U.S. at 611, 96 S.Ct. at 1079 (citations omitted). *See also Lee v. United States*, 432 U.S. 23, 33, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977) ("Only if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice' would there be any barrier to retrial.") (*citing United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)). Our Supreme Court adopted this analysis in *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980):

Generally the double jeopardy clause does not bar retrial of a defendant who obtains a new trial upon his request for a mistrial....

This restriction on the double jeopardy clause, however, is not without its own limitations. The Supreme Court has held that double jeopardy will bar retrial if the defendant sought the mistrial as a result of prosecutorial misconduct amounting to overreaching....

The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. In contrast to prosecutorial error, overreaching is not an

inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

*Id.*, 490 Pa. at 340–41, 416 A.2d at 500 (citations omitted). *And see Commonwealth v. Virtu,* 495 Pa. 59, 65 n. 7, 432 A.2d 198, 201 n. 7 (1981) (In *Starks,* Supreme Court "set forth circumstances under which prosecutorial misconduct would be the basis for a claim of former jeopardy...."); *Commonwealth v. Clark,* 287 Pa.Super. 380, 390 n. 9, 430 A.2d 655, 660 n. 9 (1981) (*Starks* represents the Commonwealth's "authoritative standard for overreaching cases....")

When *Kennedy*'s holding is compared with *Dinitz*'s, it is apparent that *Kennedy* overruled *Dinitz,* for *Kennedy* reduced the bases upon which a defendant, after moving for a mistrial, could plead double jeopardy from the two provided by *Dinitz* to only one. As Justice STEVENS explained:

Today the Court once again recognizes that the exception properly encompasses the situation in which the prosecutor commits prejudicial error with the intent to provoke a mistrial. But the Court reaches out to limit the exception to that one situation, rejecting the previous recognition that prosecutorial overreaching or harassment is also within the exception.

*Oregon v. Kennedy, supra,* 456 U.S. at 687, 102 S.Ct. at 2095 (footnotes omitted).

The majority, Justice STEVENS said, had "gratuitously lop[ped] off a portion of the previously recognized exception." *Id.* at 681, 102 S.Ct. at 2092.[2]

When one recognizes that *Kennedy* overruled *Dinitz,* the conclusion that *Kennedy* does not control this case becomes

2. Judge WIEAND's statement that *Kennedy* "did not represent a clear break with precedent" but only "clarif[ied] prior decisional language," concurring at 297. WIEAND, J., is not only contrary to Justice STEVENS's view of *Kennedy* but to this court's view. *See* discussion *infra,* citing our decisions that *Kennedy* is not to be applied retroactively.

302

clear. Appellant was tried before *Kennedy* was decided. The decision whether to apply a new constitutional rule retroactively is a matter of judicial discretion, *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981), and we have decided that because (among other reasons) *Kennedy* adopted a rule that "narrowed the prior [*Dinitz* ] standard of review applicable to mistrials, *i.e.*, overruled cases holding to the contrary," and because "injustice or hardship" would thereby be avoided, *Kennedy* should not be applied retroactively. *Commonwealth v. Beaver*, 317 Pa.Super. 88, 102, 463 A.2d 1097, 1104 (1983). *See also Commonwealth v. Lark*, 330 Pa.Super. 225, 230–231 n. 7, 479 A.2d 522, 524 n. 7 (1984) ("Our court has decided to apply *Oregon v. Kennedy, supra*, prospectively) (citations omitted)."

The question we must decide, therefore, is whether under *Dinitz* and the decisions by our Supreme Court adopting it, retrial is barred because the prosecutorial misconduct at issue here was "undertaken in bad faith to harass an accused by successive prosecutions or prejudice his prospects for an acquittal." *Commonwealth v. Clark, supra*, 287 Pa.Super. at 390, 430 A.2d at 659 (citing *Commonwealth v. Starks, supra* ). I have no doubt that it was; indeed, it would be difficult to imagine a closer fit with the *Dinitz* test.[3] The prosecutor engaged in "misconduct"; he did so "in bad faith"; and his purpose was to "prejudice [appellant's] prospects for an acquittal"—specifically, by concealing the sentencing agreement with Ravenell, to prevent the defense from damaging the credibility of the Commonwealth's key witness.

The order of the trial court should be reversed.

**3.** I cannot agree with the majority that there is a functional difference between concealed prosecutorial misconduct and overt misconduct, and in this I agree with Judge DEL SOLE. I also believe that the majority's reliance on this distinction has the incongruous result of encouraging prosecutors to conceal misconduct, for if they are successful, upon the majority's analysis, double jeopardy will not bar a retrial. Thus, although the majority says that "[they] by no means suggest that concealed misconduct is somehow preferable to blatant misconduct," at 1126, they hold that it is preferable, for they do not apply a double jeopardy bar to concealed misconduct and would apply it to blatant misconduct.

DEL SOLE, Judge, dissenting:

Today, the Majority determines that an Appellant's double jeopardy rights would not be violated by a retrial, following a conviction, where that retrial was occasioned by the intentional misconduct of the District Attorney. I must respectfully dissent.

In the instant case the District Attorney's Office actively concealed from Appellant and the trial court a sentencing arrangement made between the Commonwealth and its witness. The record establishes that this conduct was clearly intentional. Although this conduct was not intended to provoke a mistrial in order to avoid an acquittal it nevertheless deprived Appellant of a fair trial in order to secure a conviction. I find no functional difference between intentional misconduct, engaged in by the prosecution in order to avoid an acquittal by causing a mistrial and intentional misconduct, engaged in by the prosecution in concealing evidence, which results in a guilty verdict. In either case, the conduct of the prosecution once established, places the defendant twice in jeopardy for the same crime.

The Majority first concludes that the case of *Oregon v. Kennedy*, 456 U.S. 669, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) does not apply to the instant fact situation and proceeds to a discussion of Pennsylvania law relying in part on *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983). Without discussing whether or not *Kennedy*, is applicable, I believe that the Majority's reliance on *Wallace* is misplaced and that *Wallace* in fact supports the position of the Appellant herein.

In *Wallace* the Supreme Court awarded the defendant a new trial based on the prosecutor's failure to correct certain false testimony made by the Commonwealth's chief witness. The prosecutor also failed to provide defense counsel with the witness's complete criminal background and record. Following conviction, the defendant filed two motions, one requesting a new trial and one requesting discharge on double jeopardy grounds claiming the prosecutor's actions were intentional. The Supreme Court, in a Majority Opin-

ion written by Justice Larsen, granted the defendant's motion for a new trial and further determined that it was *premature at this point* to consider defendant's request for discharge on the grounds of double jeopardy. That Court noted that the trial judge made no findings on whether the District Attorney's Office performed mistakenly or that the acts were done intentionally and in bad faith. If the conduct was simply mistaken, the Court held that any harm caused by the error would be cured by a second trial. The Supreme Court went on to say that if the actions were undertaken intentionally, a subsequent prosecution would not cure the taint of the District Attorney's conduct. The Court specifically held:

> "Accordingly, our grant of a new trial is *without prejudice to Appellant's right to petition the lower court for discharge on double jeopardy grounds* (this issue has been preserved throughout these proceedings) prior to reprosecution, if any, at which time the issue would be considered in light of all the evidence adduced at the after-discovered evidence hearing." (Emphasis added)

*Commonwealth v. Wallace, supra,* 500 Pa. at 282, 455 A.2d at 1187. What the *Wallace* court did was to remand to the trial court, after granting a new trial, with instructions that the trial court made a determination whether the actions of the District Attorney's Office were intentional and then consider the defendant's motion to bar prosecution on double jeopardy grounds. In the instant case the determination of intentional misconduct by the District Attorney's in concealing evidence has been established.

The Pennsylvania Supreme Court's decision in *Commonwealth v. Wallace,* rendered nine months after the United States Supreme Court announced its decision in *Oregon v. Kennedy,* in my judgment establishes the criteria on whether or not double jeopardy prohibition will attach. The criteria is intentional misconduct, which is in keeping with my reading of *Oregon v. Kennedy* where the United States Supreme Court, when faced with a double jeopardy claim following the declaration of a mistrial held that:

"But we do hold that circumstances under which such defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was *intended* to provoke the defendant into moving for a mistrial." (Emphasis supplied)

This standard, intentional action by the prosecutor, established by the Supreme Court of the United States in prosecutorial misconduct cases replaces the doctrine of "overreaching". In *Kennedy*, the trial court granted the defendant's motion for a mistrial after the prosecutor asked a witness an objectionable question. The Oregon Court of Appeals accepted the trial court's finding that the prosecutor did not intend to cause a mistrial. Nevertheless, the Court of Appeals held the mistrial was barred because the prosecutor's conduct constituted "overreaching". The United States Supreme Court rejected this "overreaching" standard and instead found "intent" on the part of the prosecutor to be the determinative factor.

"By contrast, a standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system."

*Oregon v. Kennedy, supra,* 102 S.Ct. at 2089.

The Majority believes that it is necessary for a mistrial to be declared before intentional conduct gives rise to a double jeopardy claim. I disagree. Here, had the concealment of evidence by the prosecutor been discovered during trial, a mistrial would have been declared. However, the prosecutor's concealment prevented Appellant from making the necessary mistrial motion. If the motion were made, it would have been granted and double jeopardy would have applied. I find the distinction between the two situations, that presented here and that which would have occurred had a mistrial been granted, not so significant as to deprive

Appellant of his double jeopardy claim. The test is intentional misconduct. Intentional misconduct which is concealed is surely no better than intentional misconduct which becomes evident during trial. A party's rights should not be affected because a prosecutor was clever enough to hide his misconduct during the course of the trial.

Also, if the Majority's view is adopted, a trial court when faced with a motion for mistrial, might be reluctant to grant same since it would give rise to a double jeopardy claim while a conviction and new trial would not. This eventuality is also one that was addressed in *Kennedy, supra,* and the United States Supreme Court sought to avoid such actions by establishing an *intentional* standard as opposed to "overreaching".

It may be argued that the misconduct here can be corrected by a retrial, however, that would also be the case had a mistrial been declared and a retrial ensues. Since in the latter situation double jeopardy would prevent the retrial, I believe that it should also prevent it in the instant case.

It is my view that intentional misconduct by a prosecutor which either results in a mistrial or in a conviction and subsequent new trial are not functionally different and double jeopardy protection should apply.

POPOVICH, J., joins.