522 A.2d 537

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lawrence Demetrius SIMONS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 23, 1986.
Decided March 11, 1987.

James J. Phelan, Jr., for appellant.

Gaele Mclaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this appeal, we are called upon to determine whether the type of prosecutorial misconduct present in this case prohibits re-trial on double jeopardy grounds. We answer in the negative and affirm the decision of Superior Court, 342 Pa.Superior Ct. 281, 492 A.2d 1119, which remanded the case to the Court of Common Pleas of Philadelphia County for a new trial.

In July, 1975, Appellant, Lawrence Demetrius Simons, solicited Wayne Thorpe, Grant Ravenell and Angelo Casselle to rob Zollie Perry. While Appellant and Casselle waited in a car as lookouts, Thorpe and Ravenell, armed with handguns, approached Perry to rob him. Perry was also armed, and he shot Ravenell. Thorpe then shot Perry. The four conspirators fled. Perry died from the shooting, but Ravenell lived. In separate jury trials, first Simons, the mastermind, then Thorpe, the triggerman, were found guilty of second degree murder and robbery. In both trials, Ravenell and Casselle testified for the prosecution. Simons and Thorpe appealed. Each argued on appeal that a new trial should be granted because the prosecutor had concealed from each jury the terms of a plea agreement between Ravenell and the Commonwealth.

In Thorpe's case, we remanded to the trial court for an evidentiary hearing on this issue. Superior Court, which at the time had cognizance of the Simons appeal, also remanded for a joint hearing with the Thorpe case. After hearing evidence on the issue, Judge John A. Geisz granted new

trials to Thorpe and Simons in an Opinion and Order dated December 3, 1980. Thorpe and Simons then filed motions to dismiss the charges against them, asserting that re-trials would violate their right not to be placed twice in jeopardy. The trial court denied the motion, and, subsequently, Superior Court affirmed.

Our analysis of double jeopardy must begin with a reaffirmation of the distinction between mere prosecutorial error and overreaching which *"signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which* the double jeopardy clause was designed to protect against." *Commonwealth v. Starks,* 490 Pa. 336, 341, 416 A.2d 498, 500 (1980); *also see, Commonwealth v. Hallowell,* 497 Pa. 203, 439 A.2d 1140 (1981). Because prosecutors are the representatives of an impartial sovereignty, we demand that they "are to seek justice, not only convictions." *Commonwealth v. Cherry,* 474 Pa. 295, 301, 378 A.2d 800, 803 (1977). It is the solemn responsibility of the prosecutor as the spokesman of the government, therefore, to conduct his affairs in court in a manner that will avoid designed grievous injury to the court's proceedings. Administrative error by a prosecutor is one thing; prosecutorial overreaching which triggers double jeopardy is another.

Classification of overreaching by this Court in recent years has been subjected to different standards of review. Under *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977), a defendant would be protected against reprosecution following a mistrial if the conduct of the judge or prosecutor was grossly negligent. This expansive interpretation of the standard of review in double jeopardy cases was repudiated in *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787, *reh. denied,* 446 U.S. 947, 100 S.Ct. 2178, 64 L.Ed.2d 804 (1980).

The next step in our analysis of prosecutorial overreaching occurred in 1980 in *Commonwealth v. Starks, supra:*

The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz,* [424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976)]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States,* [432 U.S. 23, 32, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977)]; *United States v. Dinitz, supra,* at 611, 96 S.Ct. at 1081–82. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned.

Under *Starks,* a re-trial was barred only if there was a bad faith effort by the prosecutor to prejudice the defendant *or* an intent to provoke a mistrial.

*Starks,* of course, rested squarely on federal law and reflected the fact that we consistently had interpreted Pennsylvania's Double Jeopardy Clause (Art. 1, § 10) to be co-extensive with the Fifth Amendment because of identical textual and policy considerations. *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978); *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977), (Mr. Justice Nix, now Chief Justice Nix, dissenting). Thus, our decisions had not created greater or lesser protection than the federal standard. See, e.g., *Klobuchir, supra,* (Nix, J., now Chief Justice Nix, Opinion in Support of Affirmance, joined by O'Brien and Larsen, JJ.).

Under a *Starks* analysis, therefore, we established two types of overzealous prosecutions which were to be utilized in determining whether a mistrial precluded reprosecution: 1) prosecutorial acts intentionally designed to provoke a mistrial; or 2) misconduct which was undertaken in bad faith to harass the defendant deliberately. *Commonwealth v. Virtu,* 495 Pa. 59, 432 A.2d 198 (1981). As it related to mistrials, moreover, Pennsylvania's Double Jeopardy Clause

complied in all respects with the federal standard. *Commonwealth v. Sample*, 493 Pa. 347, 426 A.2d 582 (1981).

This dual mistrial step shifted perceptably in the United States Supreme Court decision in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (majority opinion by now Chief Justice Rehnquist, joined by Burger, then C.J., White and O'Connor, JJ., concurrence by Powell, J.). *Oregon* stated:

> Because of the confusion which these varying statements of the standard in question have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous decisions. We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

Justice Rehnquist's opinion recognized the fact that earlier opinions had broadened double jeopardy analysis from a more limited intent to provoke a mistrial to a more generalized standard of conduct deriving from bad faith efforts to harass the accused. Clearly, then, *Oregon* intends to prevent a new trial only where planned misconduct is calculated to force a mistrial. In thereby narrowing the standard of review, Justice Rehnquist understood as well that although the analysis raised some practical difficulties, it was still a "manageable standard which calls for the court simply to make a finding of fact by inferring the existence or non-existence of intent from objective facts and circumstances." *Id.*, at 102 S.Ct. 2089.

■ *Oregon* alerts us to the need to reconsider the continuing validity of *Starks*. In *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983), *Oregon* was accepted as authority by Mr. Justice Nix, now Chief Justice, in his concurring opinion. Superior Court, in addition, already has

accepted the new standard.[1] In light of the altered basis of *Starks*, we now declare that henceforth double jeopardy will attach only to those mistrials which have been intentionally caused by prosecutorial misconduct. We do so with the full knowledge that we can establish greater protection for our state citizens than provided by the United States Supreme Court. *Commonwealth v. Henderson*, 496 Pa. 349, 437 A.2d 387 (1981); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978). As in the rationale behind *Starks*, however, we again find a similarity of text and policy between our law and the federal decision in *Oregon*. Up to this point, of course, the *Starks* decision has been the law in this jurisdiction.

■ Because this case presently is on appeal, *Oregon's* standard of review applies immediately. The Appellant's right not to be held in double jeopardy, in any event, is not being damaged by this decision because we are describing anew only the present applicable standard of review and the circumstances which will cause double jeopardy to attach but not changing the right itself. The Appellant is getting the benefit of what our law mandates as it is being determined at the time of the appeal. Double jeopardy, nevertheless, continues to mean what it has always meant; no new rights were created by *Starks* nor are they being subtracted by virtue of this analysis. We find a recent analogy for this analysis in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), where we likewise altered the standard of review in cases involving probable cause for search warrants by adopting the "totality of circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We concluded in *Gray* that "*Gates* did not create any new rights in defendants; it merely changed the analysis of the sufficiency of the probable cause allegation in a search warrant." *Id.*, 509 Pa. at 927, 503 A.2d 921. See also, *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct.

---

1. *Commonwealth v. Beaver*, 317 Pa.Superior Ct. 88, 463 A.2d 1097 (1983); *Commonwealth v. Riffert*, 322 Pa.Superior Ct. 230, 469 A.2d 267 (1983); no allocatur was filed in *Beaver;* allocatur was denied in *Riffert* on May 1, 1984.

2085, 80 L.Ed.2d 721 (1984) (per curiam) for a similar analysis. In like manner, we now require new circumstances to satisfy the protection against double jeopardy in cases involving re-trial because of prosecutorial misconduct.

The facts of this case indicate that, indeed, an agreement was concluded among the trial court, Ravenell's attorney, and the assistant district attorney at the time when the witness Ravenell entered his guilty plea. The agreement was the usual commitment by the Commonwealth that it would recommend a lighter sentence in return for Ravenell's testimony. There is no controversy as to the existence of an accord along these lines. After Superior Court granted a remand for an evidentiary hearing on the claim, *Commonwealth v. Simons*, 275 Pa.Superior Ct. 564, 419 A.2d 44 (Special Transfer Docket 1980), Judge Geisz granted a new trial on the grounds that although the deal was described in general on cross-examination, the vital aspects of the plea agreement with Ravenell had not been fully disclosed at trial.

Pertinent testimony is as follows with Ravenell being cross-examined by Simons' defense counsel:

Q. Now, was there any arrangement, if you know, between the District Attorney's office, Judge Della Porta, who heard the plea and yourself as to any sentence or time that you will get?

A. No, sir.

Q. So, there was no recommendation made at that time, was there?

A. No, it wasn't.

Q. Have you been sentenced?

A. No, I haven't.

Q. As a result of this plea, what do you expect to get out of this?

A. I expect to go to jail.

Q. Why?

A. Because the Judge said that the crime I was involved in is—for me to go to jail.

\* \* \* \* \* \*

Did the Judge tell you what you could get at sentencing?

MR. NOLAN: Objection.

THE COURT: Objection overruled.

THE WITNESS: He said that the maximum I could get for that is fifty years, I think he said. That was all the crimes included together with robbery, murder and store shot (sic)—I mean conspiracy and all of that.

\* \* \* \* \* \*

Q. So, that what you just told the jury, a few minutes ago, is not true?

A. I just told you that I was planning to get justice for me.

Q. You told them you didn't have any deal, you didn't expect—

A. That's not no deal.

Q. —favorable consideration for your cooperation, is not a deal, is that what you're saying?

A. That's not a deal.

Q. Not a deal?

A. No.

Q. Well, you pleaded—they let you plead guilty to third degree murder, didn't they?

A. They let me plead third degree murder because I wanted to.

Q. Because you wanted to?

A. Yeah.

Q. It was up to you, is that what you're saying?

A. Well, not exactly.

Q. Well, you say you wanted to. What did you mean? That you didn't want to plead guilty to first degree murder and that you wouldn't testify unless the District Attorney gave you a deal, is that what you mean?

A. No. Wasn't like that.

Q. Nothing like that.

A. (Shakes head in the negative.)

　　*　　*　　*　　*　　*　　*

Q. Your lawyer hadn't made the deal yet, isn't that right?

A. Didn't make no agreement or deal.

Q. That's right. He didn't make it until November, is that right?

A. I don't know anything about that.

Q. You don't?

A. No, I don't.

Q. You don't remember appearing in Court in November with the testimony I just read to you where you pleaded guilty?

A. That's pleading guilty. That's not saying to an agreement or a deal.

Q. All right.

You remember being in Court when your lawyer made this statement at your guilty plea in return for his cooperation, the Commonwealth will make the fact of this cooperation known to the Judge at the time of sentencing and at that time of sentencing and that is, your Honor, further that at that time the Commonwealth will inform the Court of its favorable arrangements that were made including the question concerning any probable sentence.

Do you remember your lawyer saying that to the sentencing Judge when you were in Court?

A. Yes, he did.

Q. So, there's a possibility or a probability that there will be no sentence in this case, isn't that right?

A. Well, you have to go see him about that.

■ During this testimony, the prosecutor did not affirm the existence of an agreement, and the Commonwealth

argues that the omission was an administrative error due to the fact that the prosecutor at trial was a different person, and that the assistant district attorney who consummated the plea bargain had failed to communicate this fact. This argument need not concern us because under our law the office of the District Attorney is an entity. *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983).

■ Our chief concern, of course, is whether the actions of the trial prosecutor may be characterized as the type of conduct which falls within *Oregon*. On the one hand, the testimony of the witness in open court casts serious doubt on the allegation that the arrangement was not disclosed to the jury. Certainly, the Commonwealth did not go to any length at all in an effort to hide, disguise, or lie about the fact that a bargain existed, and that alone extinguishes any claim that the prosecutor *intended to provoke a mistrial.* That the Commonwealth could have been more forthcoming in correcting any doubts created by Ravenell's imprecise testimony is true, as it is also correct to assert that the Office of the District Attorney could have operated more efficiently in such an important criminal case. Finally, the threshold requirement of *Oregon* has not been breached, and there is no manifest evidence to suggest that the prosecution wanted to provoke a mistrial.

Accordingly, the Order of Superior Court is affirmed.

FLAHERTY, J., files a concurring opinion joined by ZAPPALA, J.

NIX, C.J., concurs in the result.

FLAHERTY, Justice, concurring.

I concur in the result only because the trial court, acting within its power, found that the prosecutor was not acting in bad faith, and I would not disturb that finding. However, because, in my view, this case presents an excellent

example of the inadequacy of the federal standard of over-reaching as defined in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), I cannot join that portion of the opinion authored by Mr. Justice Papadakos which would adopt as a matter of state constitutional protection the standard announced in *Kennedy*, supra.[1]  In my view, we would do better to adjudge cases as they arise and within our existing conceptual framework, than to blindly abandon state law to adopt the recent federal limitation on double jeopardy protection.

The protection against double jeopardy—that no one be harassed by successive prosecutions for a single wrongful act—is fundamental to the American system of criminal justice.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Commonwealth v. Starks*, 490 Pa. 336, 340, 416 A.2d 498, 499 (1980), quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).  We have also recognized that to err is human and, in the course of criminal prosecutions, some prosecutorial error is inevitable. Thus, we have said that when prosecutorial error motivates a defendant to seek a second trial, the re-trial will not be barred by double jeopardy.  However, when prosecutorial *overreaching* provokes the defendant's request for a mistrial, or the request on appeal for a new trial, the constitutional protection against double jeopardy will bar the second trial.

---

1.  PA. CONST. Art. I, Section 10 provides: "No person shall, for the same offense, be twice put in jeopardy of life or limb...."

The question then to be answered is: What constitutes *overreaching?* Until now, we defined overreaching as did the Oregon Court of Appeals in *Oregon v. Kennedy,* supra.: Bad faith conduct which threatened (1) the harassment of an accused by successive prosecutions or (2) declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict. The United States Supreme Court has apparently decided this standard was too difficult for trial and appellate courts to apply, and, for purposes of federal double jeopardy protection, has abandoned these standards in favor of a standard which requires courts to find that the prosecutor "intended to 'goad' the defendant into moving for a mistrial" before a second prosecution is barred. *Oregon v. Kennedy,* supra at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425. In my view, the facts of the instant case are sufficient to show the inadequacy of the federal standard in protecting accused persons from prosecutorial misconduct; thus, I express my opposition to adoption of such a standard as a matter of Pennsylvania constitutional protection.

The instant controversy arises out of the Commonwealth's failure to provide the fact finder with the details of a plea bargain concerning the only Commonwealth witness who was present at the time the crime was committed, and without whose testimony there would have been no case. The terms of the bargain involve more than what the majority characterizes as "the *usual* commitment by the Commonwealth that it would recommend a lighter sentence in return for [the witness's] testimony." In return for testimony in two cases, the Commonwealth promised a witness who was charged with murder and other crimes which, in the aggregate, could have brought a total of 55 years in prison, to recommend 11½ to 23 months in jail with credit for time already served, plus a term of probation. This is the sentence which was subsequently imposed. Despite the fact that the witness was fully apprised of the terms of the agreement, he testified at appellant's trial that

there was no agreement as to what sentence he would get and that he expected that he could go to prison for 55 years. The error was compounded when the prosecutor failed to clarify the terms of the agreement for the jury. The fact finder was entitled to know the precise terms of the agreement in order to assess whether the witness's testimony was motivated by truth and remorse for his misdeeds or simply a desire to secure his own early release. Concerning as it does the alleged *concealment* of information which was necessary to the truth-determining process, the alleged misconduct, even if proved, could well never satisfy the new federal standard, as concealment will always negate any "intent to goad the defendant request a mistrial." The intent of concealment, indeed its essence, is that the defendant would never know the facts and, thus, would not base any claim for relief on those facts.

Likewise, there may be other cases where the Commonwealth conceals its efforts to subvert the truth-determining process. Where, for example, the Commonwealth knowingly uses perjured testimony, there will of necessity be no intent to goad the defendant into moving for a mistrial. Quite the opposite, the intent would be that the defendant should never know how his wrongful conviction came about. Should the Commonwealth's concealment of necessary information vitiate the double jeopardy protection afforded by our constitution? I think not. As Judge Del Sole opined below: "I find no functional difference between intentional misconduct, engaged in by the prosecution in order to avoid an acquittal by causing a mistrial and intentional misconduct, engaged in by the prosecution in concealing evidence, which results in a guilty verdict. In either case, the conduct of the prosecution once established, places the defendant twice in jeopardy for the same crime." *Commonwealth v. Simons*, 342 Pa.Super. 281, 303, 492 A.2d 1119, 1131 (1985).

ZAPPALA, J., joins this concurring opinion.