554 A.2d 112

**COMMONWEALTH of Pennsylvania**

v.

**Reginald HUNTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 1988.

Filed Feb. 14, 1989.

Norris E. Gelman, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for terroristic threats, rape, burglary, theft by unlawful taking, simple assault and indecent assault. Appellant contends that trial counsel was ineffective for (1) moving for a mistrial; (2) failing to consult him prior to moving for a mistrial; (3) failing to urge his discharge on double jeopardy grounds prior to his second trial; and (4) failing to argue at the suppression hearing that appellant's mother should not have served as an "interested adult" because she had a conflict of interest. We disagree, and for the reasons that follow, we affirm the judgment of sentence.

On February 3, 1983, appellant was arrested and charged with terroristic threats, 18 Pa.C.S.A. § 2706, rape, *id.* § 3121, burglary, *id.* § 3502, theft by unlawful taking, *id.* § 3921, simple assault, *id.* § 2701, and indecent assault, *id.* § 3126. Appellant filed a motion to suppress, which was denied by the court below. The jury was sworn on March

13, 1984 and the trial began. On March 16, while the jury was deliberating, a juror failed to appear because of illness, and the court granted a mistrial upon motion of appellant.

The Commonwealth then elected to retry appellant. On July 9, 1984, appellant again filed a motion to suppress, and the court denied the motion. After a jury trial, appellant was found guilty of each of the charges. Post-verdict motions were filed and denied. Appellant was sentenced to an aggregate term of imprisonment of nine-and-one-half-to-nineteen years.[1] Thereafter, appellant filed an appeal with this Court, but his appeal was dismissed for failure to file a brief. Represented by new counsel, appellant sought relief under the Post Conviction Hearing Act (PCHA), §§ 42 Pa.C. S.A. 9541–51 (repealed).[2] On June 22, 1988, the court below granted appellant the right to appeal *nunc pro tunc*. This appeal followed.

Because appellant's first two contentions are closely intertwined, they will be taken together. Appellant argues that trial counsel was ineffective for (1) moving for a mistrial; and (2) failing to consult appellant prior to moving for a mistrial. The determination whether counsel rendered ineffective assistance is reached through a two-prong test. First, we must ascertain whether the issues underlying the claims of ineffectiveness have arguable merit. *See Commonwealth v. Buehl*, 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986). This requirement is based upon the principle that we will not find counsel ineffective for failing to pursue a frivolous claim or strategy. *See Commonwealth v. Parker*, 503 Pa. 336, 341, 469 A.2d 582, 584 (1982). Second, if appellant's claims do have arguable merit, we must determine whether the "course chosen by counsel had some

1. Specifically, appellant's sentence was suspended on the charges of terroristic threats, theft by unlawful taking, simple assault, and indecent assault. He was sentenced to a term of imprisonment of six-and-one-half-to-thirteen years for rape and three-to-six years for burglary.

2. The PCHA has been modified in part, repealed in part, and renamed the Post Conviction Relief Act (PCRA) by the Act of April 13, 1988, 42 Pa.C.S.A. §§ 9541–9546. The new provision applies to all actions for collateral relief instituted on or after the effective date. Appellant's petition was filed before the effective date of the PCRA.

reasonable basis designed to serve the best interests of his [or her] client." *Commonwealth v. Buehl,* 510 Pa. at 378, 508 A.2d at 1174. If our review of the record reveals that counsel was ineffective, we then must determine whether appellant has demonstrated that counsel's ineffectiveness worked to his or her prejudice. *See Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 975 (1987). For this purpose, our Supreme Court adopted the test announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Commonwealth v. Pierce,* 515 Pa. at 159, 527 A.2d at 976–77. Under *Strickland,* to prove that counsel's ineffectiveness resulted in prejudice, an appellant must show that the error was "so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2064.

In this case, because no evidentiary hearing on appellant's ineffectiveness claims has been held, we must determine whether they have arguable merit and whether appellant has been prejudiced. If we conclude that both of the foregoing requirements have been satisfied, we will remand the case for an evidentiary hearing to determine whether counsel had a reasonable basis for his actions. *See Commonwealth v. Spotts,* 341 Pa.Super. 31, 33, 491 A.2d 132, 134 (1985).

The initial step in our analysis is to determine whether appellant's underlying contentions have arguable merit. The Double Jeopardy Clauses of both the United States[3] and Pennsylvania[4] constitutions serve three distinct objectives: "the protection of the integrity of a final judgment, the prohibition against multiple prosecutions even where no final determination of guilt has been made and the proscrip-

3. U.S. Const. amend. V. The double jeopardy clause of the fifth amendment is applicable to the states through the fourteenth amendment. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. Pa. Const. art. 1, § 10. Pennsylvania's Double Jeopardy Clause has been interpreted as coextensive with that of the fifth amendment because of "identical textual and policy considerations." *Commonwealth v. Simons,* 514 Pa. 10, 14, 522 A.2d 537, 540 (1987).

tion against multiple punishments for the same offense," *Commonwealth v. Zoller*, 507 Pa. 344, 349, 490 A.2d 394, 396 (1985), *rev'd sub nom. Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986).

> Underlying this constitutional safeguard is the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'

*United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)). The prohibition against double jeopardy, however, does not necessarily bar retrial of an accused when an earlier proceeding is terminated prior to judgment. *See Commonwealth v. Mitchell*, 488 Pa. 75, 78, 410 A.2d 1232, 1233–34 (1980). Our courts long have held that, when a mistrial is ordered, retrials are limited to cases in which (1) the court, over the defendant's objection, declares a mistrial on the ground of manifest necessity or (2) the defendant consents to or requests the mistrial. *See e.g., Commonwealth v. Mehmeti*, 501 Pa. 589, 592, 462 A.2d 657, 659 (1983); *Commonwealth v. Mitchell*, 488 Pa. at 78, 410 A.2d at 1234; *Commonwealth v. Bolden*, 472 Pa. 602, 626, 373 A.2d 90, 101 (1977) (plurality); *Commonwealth v. Wideman*, 453 Pa. 119, 122, 306 A.2d 894, 895 (1973); *Commonwealth v. Smith*, 324 Pa.Super. 156, 160, 471 A.2d 510, 512 (1984); *Commonwealth v. Perrin*, 272 Pa.Super. 24, 28, 414 A.2d 650, 652 (1979); Pa.R.Crim.P. 1118(b).

■ It now is settled law that when a jury is discharged before reaching a verdict, and without defense consent, retrial is permissible if the discharge was manifestly necessary. *See Commonwealth v. Campitelli*, 347 Pa.Super. 615, 618, 500 A.2d 1228, 1229 (1985); *Commonwealth v. Smith*, 324 Pa.Super. at 160, 471 A.2d at 512. " 'Manifest

necessity' is the test for appellate review of the trial judge's exercise of his discretion in declaring a mistrial without defendant's consent." *Commonwealth v. Smith,* 324 Pa. Super. at 160, 471 A.2d at 512. The most often cited description of this test was related by Justice Story, as follows:

> The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824) (quoted in *Commonwealth v. Manley,* 252 Pa.Super. 77, 85–86, 380 A.2d 1290, 1294 (1977), *vacated on other grounds,* 491 Pa. 461, 421 A.2d 636 (1980)). Circumstances in which retrial was justified by manifest necessity include "jury deadlock, jury bias and illness of the judge or jury." *Commonwealth v. Bolden,* 472 Pa. at 638, 373 A.2d at 107; *see, e.g., Commonwealth v. Mehmeti,* 501 Pa. at 592, 462 A.2d at 659–60 (1983) (jury deadlock); *Commonwealth v. Manley,* 252 Pa.Super. at 86, 380 A.2d at 1294 (illness of judge). We note, however, that "the determination whether the trial court's decision to abort a trial was 'dictated' by manifest necessity does not lend itself to rigid rules and each case must 'turn on the particular facts.'" *Commonwealth v. Bolden,* 472 Pa. at 638, 373 A.2d at 107 (quoting *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)).

■ In the second case, when a defendant moves for a mistrial, the request ordinarily is "assumed to remove any barrier to reprosecution, 'even if the defendant's motion is necessitated by prosecutorial or judicial error.'" *Commonwealth v. Bolden,* 472 Pa. at 638, 373 A.2d at 107 (quoting

*United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality)); *accord Commonwealth v. McClain,* 309 Pa.Super. 163, 168, 454 A.2d 1134, 1136 (1983). Until recently, we did recognize a range of exceptions to this general rule. *See Commonwealth v. Simons,* 514 Pa. 10, 15–16, 522 A.2d 537, 539–41 (1987). Under current law, however, double jeopardy will bar retrial only in "cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982) (plurality) (adopted in *Commonwealth v. Simons,* 514 Pa. at 16, 522 A.2d at 540–41).

In evaluating the double jeopardy implications of the grant of a mistrial on the motion of a defendant, we follow *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), in which the Court specifically held that the manifest necessity standard is inapplicable to such cases. *Commonwealth v. Campitelli,* 347 Pa.Super. at 618, 500 A.2d at 1229. A court instead must ascertain whether the misconduct " 'was undertaken with the *specific* intent to precipitate a mistrial.' " *Id.* (emphasis in original) (quoting *Commonwealth v. Simons,* 342 Pa.Super. 281, 291, 492 A.2d 1119, 1125 (1985), *affirmed,* 514 Pa. 10, 522 A.2d 537 (1987)). Although analyzing misconduct in this context raises some practical difficulties, the standard set forth above has been described by our Supreme Court as "a manageable [one] which calls for the court simply to make a finding of fact by inferring the existence or non-existence of intent from objective facts and circumstances." *Commonwealth v. Simons,* 514 Pa. at 15, 522 A.2d at 540 (paraphrasing *Oregon v. Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089).

■ Importantly, we note that an appeal raising the claim that appellant did not personally agree to counsel's consent to or motion for a mistrial will be closely scrutinized. Generally, the decisions of counsel are binding on appellant, *see Commonwealth ex rel. Bell v. Rundle,* 420 Pa. 127, 216

A.2d 57, *cert. denied,* 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 678 (1966), and in the absence of a timely on the record objection by appellant, *see Commonwealth v. Owens,* 299 Pa.Super. 1, 6–7, 445 A.2d 117, 119 (1982); *Commonwealth v. Manley,* 252 Pa.Super. at 85, 380 A.2d at 1294, or some credible evidence that appellant contemporaneously expressed dissatisfaction with counsel's action, we will conclude that appellant acceded in counsel's decision.

In this case, a mistrial was granted on motion of appellant's counsel, and the manifest injustice standard, consequently, is inapplicable. *See Commonwealth v. Campitelli,* 347 Pa.Super. at 618, 500 A.2d at 1229. Double jeopardy, therefore, would bar appellant's second trial only if his motion was necessitated by misconduct on the part of the judge or prosecutor "undertaken with the *specific* intent to precipitate a mistrial," but appellant makes no allegations of prosecutorial misconduct. *See id.*

Stripped to its essential elements, appellant's claim seems to be that because his prior counsel failed to consult him before moving for a mistrial, his second trial somehow should be barred by double jeopardy.[5] At the outset, we note that we can find no authority to support appellant's claim that counsel's failure to consult his client prior to moving for a mistrial necessitates a discharge rather than a retrial. Further, we have scrutinized the record and have found no indication that appellant timely objected to trial counsel's decision. N.T. March 16, 1984 at 2–3. Additionally, appellant has failed to present any evidence that trial counsel's conduct did not then reflect appellant's own desires. Without satisfaction by appellant of either of the above-stated conditions, we cannot infer that trial counsel's decision to move for a mistrial did not represent appellant's

5. Presumably, appellant's alternative to a second trial would have been to continue the first trial with less than a full complement of jurors. Under Pa.R.Crim.P. 1103, a defendant may agree, with the consent of his attorney, to be tried by a jury of no fewer than six members. Counsel for appellant, however, was unwilling to proceed with an eleven member jury, and appellant did not object to counsel's decision. N.T. March 16, 1984 at 2.

wishes.    Accordingly, we conclude appellant's first two claims of ineffectiveness have no arguable merit.

■ Appellant next argues that trial counsel was ineffective for failing to file a motion to dismiss the retrial on double jeopardy grounds.   After a mistrial is declared and prior to commencement of the retrial, a defendant has a right to file a pre-trial motion to dismiss on the ground of double jeopardy. *See, e.g., Commonwealth v. Lark,* 330 Pa.Super. 225, 227, 479 A.2d 522, 523 (1984); *Commonwealth v. Kresge,* 317 Pa.Super. 405, 408–09, 464 A.2d 384, 386 (1983).   An order denying such a motion is final and immediately appealable. *See Commonwealth v. Marconi,* 340 Pa.Super. 463, 468, 490 A.2d 871, 874 (1985); *Commonwealth v. McClain,* 309 Pa.Super. at 167 n. 1, 454 A.2d at 1136 n. 1; *see also* Pa.R.A.P. 311(a)(5).   We already have concluded that the appellant's underlying claim, that a retrial is barred on double jeopardy grounds, lacks arguable merit.   Because counsel will not be deemed ineffective for failing to pursue a frivolous claim or strategy, *see Commonwealth v. Parker,* 503 Pa. at 341, 469 A.2d at 584, we conclude that appellant's present claim also lacks arguable merit.

■ Appellant finally contends that counsel was ineffective for failing to argue at the suppression hearing that appellant's mother should not have served as an "interested adult" because she had a conflict of interest.   More precisely, appellant argues as follows:

Following appellant's arrest he made a statement to police, specifically Officer Cullen of the Sex Crimes Unit. Since appellant was a juvenile at the time of his arrest, his mother was present for the *Miranda* warnings and his statement, and she signed the statement as well. Appellant's mother was Florence Leonard.   The victim, Ms. Iseley had married her [Florence Leonard's] father well over 10 years prior to this assault.   Thus, Ms. Leonard had a direct actual conflict of interest since she

not only knew the victim but was her step daughter as well.

Brief for Appellant at 16.

Our Supreme Court, in *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984), announced the standard for ascertaining the admissibility of statements made by a juvenile:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of the circumstances analysis to all questions involving the waiver of rights and the voluntariness of confession made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given.

*Id.*, 504 Pa. at 521, 475 A.2d at 1288. The Court highlighted the following factors as particularly relevant to this analysis: "the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult." *Id.*

Reviewing this case under the totality of the circumstances test, we note that appellant was two weeks shy of his eighteenth birthday when he was interviewed by the police. N.T. July 11, 1984 at 147–48, and he had completed tenth grade. N.T. July 9, 1984 at 52 (Transcript of hearing on Motion to Suppress). Additionally, appellant's mother was present at the interview. *Id.* at 9–10. He was orally advised of his rights in the presence of his mother, *id.* at 10–12, and he appeared to understand them, *id.* at 12. Both appellant and his mother initialled the form on which the warnings also were written before appellant made a statement. *Id.* at 13–14; N.T. July 11, 1984 at 210–11. Appellant then waived his rights and made an *exculpatory* statement. N.T. July 11, 1984 at 214–18. Finally, both appellant and his mother read and signed each page of appellant's statement, which had been recorded verbatim by the officer. *Id.* at 19; N.T. July 11, 1984 at 213.

Although appellant asserts that his mother had a conflict of interest disqualifying her from being an interested adult, he does not specifically state how this conflict of interest adversely affected him. Further, appellant failed to establish at the suppression hearing or at trial that his mother and step-grandmother had the kind of relationship that would have resulted in a conflict of interest, and we decline to conclude that the existence of the filial relationship of step-mother and step-daughter would cause a *per se* conflict of interest in these circumstances. Moreover, appellant's mother did testify on his behalf at both the suppression hearing, *id.* at 55–60, and the trial, N.T. July 11, 1984 at 19–23. Finally, we note that even if appellant's mother was not an interested adult, that would be just one factor in the *Williams* analysis, and would not by itself require suppression of the statement. Here, under the totality of the circumstances, we cannot conclude that appellant's statement should have been suppressed. Accordingly, we conclude that appellant's claim lacks arguable merit. Thus, for the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.