617 A.2d 1289

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John RIGHTLEY.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1992.

Filed Dec. 15, 1992.

Vram Nedurian, Jr., Asst. Dist. Atty., Newton Square, for Com., appellant.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order arresting judgment against defendant, John Rightley [hereinafter "Rightley"]. After the third trial on the matter, a jury convicted Rightley of two counts each of simple assault and aggravated assault. Rightly asserted in post-trial motions that the third trial violated his double jeopardy rights, and that the evidence at trial was insufficient to sustain a conviction for aggravated assault. The trial court arrested judgment on the aggravated assault charges, agreeing that the evidence was insufficient. The

Commonwealth appeals that determination. We find that the evidence was sufficient to sustain the jury's verdict. We therefore reverse and remand for sentencing.

In 1987, Rightley allegedly struck a man with a baseball bat during a fight. Rightley was arrested and charged with simple and aggravated assault. His first trial resulted in a hung jury. At the second trial, a jury found Rightley guilty, but the trial judge granted his motion for a new trial based on several incidents of prosecutorial misconduct. A panel of this Court affirmed the trial court's grant of a new trial. Before his third trial on these charges, Rightley moved to dismiss the action, claiming that his double jeopardy rights were violated. This motion was denied and the case proceeded to trial. The jury found Rightley guilty of aggravated assault. Rightley filed post-trial motions, rearguing his double jeopardy claim and claiming that the evidence at trial was insufficient to sustain the verdict. Rightley's double jeopardy claim was denied. The trial court agreed with the insufficiency claim, however, and arrested judgment. The Commonwealth appeals the sufficiency finding.

Before we reach the merits of the Commonwealth's appeal, we are compelled to examine Rightley's contention that his double jeopardy rights were violated. Since Rightley was never sentenced, he did not appeal the issue. The matter is before us, however, as the result of a motion to remand which Rightley filed after we heard oral argument on the Commonwealth's appeal. Rightley's motion to remand asked us to remand the case to the trial court in light of the recent Pennsylvania Supreme Court case of *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992). We agree with Rightley's assertion that the double jeopardy issue deserves expedient consideration. Since his claim only requires an interpretation of *Smith*, however, we will discuss the issue here.

 Normally, a criminal defendant may take a direct appeal on an issue only after sentencing. *Commonwealth v. Schauffler*, 397 Pa.Super. 310, 580 A.2d 314 (1990), *alloc. denied*, 525 Pa. 663, 583 A.2d 793. An appeal before judgment of sentence, however, may be considered in exceptional cir-

cumstances, such as where an appeal is necessary to prevent great injustice to a defendant, where an issue of basic human rights is involved, or where an issue of great importance is involved. *Commonwealth v. Reagan,* 330 Pa.Super. 417, 479 A.2d 621 (1984). Our Courts have recognized that since colorable double jeopardy claims involve an irreparable loss of liberty, immediate access to the appellate courts is "imperative." *Commonwealth v. Gains,* 383 Pa.Super. 208, 556 A.2d 870, 875 (1989). "Otherwise, the risk is simply too great that the defendant will be deprived of his right to be free from an unnecessary retrial and its accompanying 'expense, trauma, and rigors incident to a prosecution for a second time.'" *Id.* It is for this reason that Pennsylvania appellate courts permit interlocutory appeals of colorable pre-trial double jeopardy claims. *See, Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977).

Furthermore, since *Smith* was decided before the final resolution of Rightley's case on direct appeal, we must apply the new law retroactively. This rule has its roots in the notion that if

subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.

*Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992) (citing *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801)).

The appellate court's duty to apply the law as it exists at the time it renders its decision is especially important in criminal cases. Reliance on an invalid law imposes unwarranted hardship on the defendant while protecting no societal interest in enforcing the invalid law. *Id., Kohl,* 532 Pa. at ——, 615 A.2d at 316, *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981). Thus, even though *Smith* was not a part of Pennsylva-

nia double jeopardy jurisprudence at the time the trial court heard Rightley's pre- and post-trial motions, we are bound to interpret it while his case is on direct review.

Several reasons lead to the conclusion that Rightley's double jeopardy claim should be addressed at this time. First, if we were to find merit to the double jeopardy claim, a discussion of the sufficiency issue would be moot since the trial itself would have been ineffectual. Second, it would be anomalous to make defendant wait until the case were remanded for sentencing on his simple assault convictions to appeal the issue. Rightley is incarcerated awaiting sentencing on the simple assault conviction as well as our resolution of the Commonwealth's appeal. If the third trial was held improperly, Rightley is incarcerated in violation of his constitutional rights.[1] Finally, no interest would be served by addressing the issue at a later date. Rightley's claim involves a straightforward interpretation of the law, rather than further factual or evidentiary determinations. We now turn to Rightley's claim.

After his second trial, Rightley sought a new trial on the basis that certain prosecutorial misconduct prejudiced his right to a fair trial. The trial court granted the motion and this Court affirmed. *See, Commonwealth v. Rightley,* memorandum opinion, 8/16/91. Our affirmance was based on our opinion that the trial judge did not abuse his discretion in granting a new trial in light of certain prejudicial prosecutorial misconduct. The principal indiscretions at trial included the prosecutor's "intentional misrepresentation" that a witness had related inconsistent accounts of the incident in question and certain improper statements made by the prosecutor during his closing argument. *Id.*

 In its most general sense, the Double Jeopardy Clause of the Pennsylvania Constitution provides a criminal

---

1. The record indicates that Rightley has an extensive criminal past, and may very well be imprisoned for additional offenses. Still, we must address the issue of whether he is unconstitutionally incarcerated for the current charges regardless of whether he has committed other crimes.

defendant with two-fold protection. It protects against a defendant being harassed by multiple prosecutions for the same wrongful act and against multiple punishments for the same crime. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). In cases where a criminal defendant, while on trial for an alleged offense, moves for a mistrial, the request is normally "assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *Id.* at 638, 373 A.2d at 107 (citation omitted). The rationale behind this general rule is that a defendant on trial is faced with the decision to move for a mistrial, he should be entitled to either expose the problem to the jury in an attempt to obtain an acquittal, or risk conviction by the first jury and later obtain a reversal and grant of a new trial on appeal. So long as defendant retains control over the course to be followed in the event of potential prejudicial error, double jeopardy protections are not implicated. *Id.* at 639, 373 A.2d at 108; *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Pennsylvania law has recognized certain exceptions to the general rule which will bar retrial in certain instances of prosecutorial or judicial overreaching. *Bolden, supra; Commonwealth v. Hunter*, 381 Pa.Super. 499, 554 A.2d 112 (1989).

At the time of Rightley's third trial, Pennsylvania law provided that double jeopardy would bar retrial in the event of prosecutorial misconduct only in cases where the Commonwealth attempted to "goad" the defendant into moving for a mistrial. *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987) (adopting *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)); *Hunter*, 381 Pa.Super. at 505, 554 A.2d at 116. Prosecutorial misconduct which was "undertaken in bad faith to harass the defendant deliberately" was not conduct to which jeopardy would attach. *Simons*, 514 Pa. at 14, 522 A.2d at 540. The purpose for drawing this distinction lay in the supposition that where the Commonwealth attempted to "goad" defendant into moving for a mistrial, the Commonwealth could effectively seek a second trial if it was unhappy with the progress of the first. *Id.; Kennedy*, 456

U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425. Bad faith conduct or harassment of defendant, on the other hand, is not necessarily designed to seek a second trial, but its effect may deprive a defendant of a fair trial, thereby warranting a new trial.

In *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), our Supreme Court eviscerated the distinction that was formerly drawn under the *Oregon v. Kennedy* and *Commonwealth v. Simons* standards. In doing so, the Supreme Court wrote:

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Because the prosecutor's conduct in this case was intended to prejudice the defendant and thereby deny him a fair trial, appellant must be discharged on the grounds that his Double Jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second trial.

*Smith*, at ——, 615 A.2d at 325.

Rightley contends that since the trial court found that the prosecutor had engaged in intentional misconduct during the second trial, *Smith* commands that his third trial was held in violation of his double jeopardy rights. While we acknowledge that this is a close case, we cannot agree that Rightley's third trial was barred by the Double Jeopardy Clause of the Pennsylvania Constitution, as interpreted by our Supreme Court in *Smith*.

Smith was a a high school principal in the Philadelphia area who was on trial for the murder of a schoolteacher. He was accused of conspiring with the teacher's husband to murder her and recover insurance proceeds upon her death. Smith's first conviction was reversed after the Supreme Court found that certain inadmissible hearsay statements were admitted as

evidence at trial. He was thus granted a new trial. *Commonwealth v. Smith*, 523 Pa. 577, 568 A.2d 600 (1989).

Before the second trial, however, the defense learned that the prosecution had concealed certain physical evidence.[2] The evidence took the form of "adhesive lifters" which contained grains of sand lifted from decedent's body after the killing. This evidence was vital to Smith's defense, as it was his contention that the murder took place in Cape May, New Jersey, a location at which Smith could not be placed. There is no mistaking the fact that this evidence was known to the Commonwealth during Smith's first trial, and that it was critical to his defense. The attorney general prosecuting the case wrote to his superior in a mid-trial memorandum: "It is obvious from [defense counsel's] tactics that he will attempt to establish that Mrs. Reinert was killed at the shore in Cape May New Jersey ... The sand, therefore, is extremely material to the defense case." *Smith*, 532 Pa. at ——, 615 A.2d at 323. Not only did the Commonwealth fail to disclose this evidence during Smith's first trial, but it also accused a police officer of fabricating testimony that sand was found on decedent's body. *Id.*

The Supreme Court thus held that while the prosecutor's conduct was not intended to "goad" defendant into moving for a mistrial, it was "beyond all principles of justice and fairness." *Smith*, at ——, 615 A.2d at 324. Thus, the Supreme Court overruled *Simons* and held that double jeopardy would bar retrial in cases where the prosecutors intentionally undertake to deprive defendant of a fair trial. *Smith*, at ——, 615 A.2d at 325.[3]

**2.** There was also evidence that the Commonwealth concealed information that a key Commonwealth witness received favorable treatment in exchange for his testimony. *Smith*, 532 Pa. at ——, 615 A.2d at 322. The Supreme Court focused primarily on the physical evidence issue, however. We will do the same.

**3.** The heart of our Supreme Court's dissatisfaction with the *Simons* and *Oregon* standard is its inability to address a situation where the Commonwealth conceals certain prejudicial tactics. *Smith*, 532 Pa. at ——, 615 A.2d at 322. Where the Commonwealth prejudices a criminal defendant by employing subversive tactics, these tactics are certainly not meant to "goad" the defendant into moving for a mistrial, since the

The effect of *Smith,* however, is not to create a *per se* bar to retrial in all cases of intentional prosecutorial misconduct. Rather, *Smith* merely adds to the exceptions to the general rule that when a defendant moves for a mistrial on the grounds of prosecutorial overreaching, retrial will not be barred under the Double Jeopardy Clause of the Pennsylvania Constitution. Until *Smith,* the only exception to the general rule was that espoused by *Oregon v. Kennedy* and *Commonwealth v. Simons.* Now, in order for double jeopardy to bar retrial in cases of prosecutorial misconduct, there must be a showing that the Commonwealth either (1) goaded defendant into moving for a mistrial, or (2) specifically undertook to prejudice defendant to the point of denying him a fair trial. Absent such a showing, retrial is not barred.

█ In this case, neither exception is applicable. First, there is no indication anywhere in the record that Rightley was goaded into moving for a mistrial during his second trial. More importantly, the Commonwealth's conduct was not specifically undertaken to deprive Rightley of a fair trial. As we noted, our Court affirmed the trial court's grant of a new trial based on two specific instances: when the prosecutor implied that a witness was giving inconsistent testimony and when the prosecutor made three improper statements during his closing argument.

Rightley claims that *Smith* bars reprosecution in this case because we originally held that the prosecutor intentionally misrepresented that the witness on the stand was giving testimony inconsistent with her former statements. While this may be so, there is no finding that this improper conduct, albeit intentional was intended to deprive Rightley of a fair trial. Indeed, this is not a case like *Smith* where the egregious conduct was in the nature of concealing exculpatory

"intent would be that the defendant should never know how his wrongful conduct ever came about." *Id.* (quoting *Simons, supra,* at 23, 522 A.2d at 544). Indeed, such subversive tactics are often times more heinous than conduct which occurs in defendant's presence in the courtroom, simply because the injustice done to defendant may never surface. As we discuss in the text, the prosecutors in Rightley's case were not accused of engaging in these subversive tactics.

evidence. Here the over-aggressive prosecutor exceeded the bounds of proper cross-examination. Since Rightley objected to this conduct at trial, it can hardly be argued that this conduct is subversive. This is not the type of prosecutorial conduct which *Smith* is intended to sanction. As the United States Supreme Court has recognized, "[e]very act on the part of a rational prosecutor is meant to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of guilt." *Kennedy,* 456 U.S. at 674, 102 S.Ct. at 2089, 72 L.Ed.2d at 424. The role of the trial judge is to evaluate when the prosecutor has overstepped the bounds of zealous advocacy into an area which deprives the defendant of a fair trial. Unless the conduct, while perhaps reprehensible, is actually designed to demean or subvert the truth seeking process, *Smith* will not apply to bar a retrial.

Likewise, the improper comments were not designed to deprive defendant of a fair trial. It is hornbook law that not every intemperate comment made by a prosecutor will be automatic grounds for a new trial. *Commonwealth v. Goins,* 508 Pa. 270, 495 A.2d 527 (1985). In this case, there is simply no indication that the prosecutor made the remarks intending to deprive Rightley of a fair trial. We do not read *Smith* to imply that when a trial judge exercises his discretionary function in granting a mistrial on the basis of an improper prosecutorial comment, a new trial is barred. Indeed, interpreting *Smith* in such a broad manner may work against a defendant, since a trial judge would be extremely hesitant to grant a mistrial. *See, Oregon v. Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425. We therefore conclude that Rightley's third trial was not barred by principles of double jeopardy.

We now proceed to the merits of the Commonwealth's appeal. The Commonwealth argues that the trial judge erred by arresting judgment on the ground that the evidence was insufficient to find Rightley guilty of aggravated assault. We agree and reverse.

Our standard of review in this situation is well settled.

The effect of a motion in arrest of judgment is to admit all facts which the Commonwealth's evidence tends to prove. The entire record must be considered in evaluating the sufficiency of the evidence. All of the evidence must be read in the light most favorable to the Commonwealth, which is entitled to all reasonable inferences arising therefrom.

* * * * * *

Restated, the test requires, before the granting of a motion in arrest of judgment based on insufficiency of the evidence, that the court make a finding that the evidence supporting the verdict of guilt is so weak and inconclusive that a jury of reasonable men and women could not be satisfied as to the guilt of the defendant beyond a reasonable doubt.

*Commonwealth v. Rawles*, 501 Pa. 514, 521, 462 A.2d 619, 622 (1983) (citations omitted).

Rightley was charged with committing aggravated assault after allegedly clubbing his victim with an aluminum baseball bat during a scuffle. Aggravated assault is committed when a person "attempts to cause serious bodily injury to another or attempts to cause such injury intentionally, knowingly, recklessly, or under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1); *Commonwealth v. Aycock*, 323 Pa.Super. 62, 470 A.2d 130 (1983). Intent to cause serious bodily injury may be proved circumstantially. *Commonwealth v. Elrod*, 392 Pa.Super. 274, 572 A.2d 1229 (1990), *alloc. denied*, 527 Pa. 629, 592 A.2d 1297. The conduct giving rise to an inference that defendant intended to cause serious bodily injury need not in itself be life threatening. *Id.*

The evidence adduced at trial, when viewed favorably to the Commonwealth, established that Rightley was engaged in a fist-fight with a man named Ferkler. After the fight subsided, one of Rightley's friends engaged Ferkler in another fight. While the two were fighting, Rightley procured an aluminum baseball bat and stated to his girlfriend, "Look what this man did to me, no one does this to me and lives." N.T.

9/27/90, at 54. Rightley approached Ferkler from behind and hit him in the head with the bat. Ferkler fell, and Rightley hit him again across the shoulders. Ferkler fell flat on the ground, and Rightley swung again and missed. Ferkler was treated at a local hospital for a ruptured eardrum and a minor concussion. He still suffers from a hearing impairment.

The trial judge held that this evidence was insufficient to support a finding of aggravated assault. He reasoned:

the relatively minor nature of the injuries sustained by the victim reflects that the blows delivered by the defendant were not intended to cause serious bodily injury to the victim. If it had been a conscious objective of the defendant to cause Thomas Ferkler serious bodily injury he most certainly could have inflicted such injury using the instrumentality of an aluminum baseball bat. The complete absence of such serious bodily injury to the victim under circumstances where the opportunity and instrumentality of inflict such injury existed leads to the inescapable conclusion that the defendant did not act with the conscious objective of causing such injury.

Trial court opinion, at 6. We find this reasoning unpersuasive.

The circumstances surrounding the incident were sufficient to allow a jury to find that Rightley attempted to inflict serious bodily injury on his victim. Rightley was involved in a dispute in which he wielded a baseball bat, swung at his victim three times, and struck him twice. The victim was hospitalized for three days with a concussion. In *Commonwealth v. Aycock*, 323 Pa.Super. 62, 470 A.2d 130 (1983), defendant used an eighteen-inch piece of channel steel to strike a victim. The victim suffered lacerations which required sutures. This Court held that the evidence was sufficient to support a conviction for aggravated assault. In *Commonwealth v. Cavanaugh*, 278 Pa.Super. 542, 420 A.2d 674 (1980), defendant struck the victim three times, once to the head, with a tire iron. We held that although the victim did not suffer actual serious bodily injury, the circumstances were sufficient to allow an inference that defendant attempted to cause serious bodily injury.

Furthermore, reasoning similar to that adopted by the trial court in this case was rejected in *Commonwealth v. Elrod, supra.* In *Elrod,* defendant held a knife to a victim's throat, threatening to injure her while he forcibly removed her clothes. Defendant argued on appeal that the evidence was insufficient to support a conviction to support aggravated assault because he had ample opportunity to stab the victim before his attack was interrupted by a passerby who called the police. The fact that he did not stab her, defendant argued, indicated that he had no intention to carry out his verbal threats. This Court rejected that argument holding that it was "eminently reasonable" for the factfinder to conclude that defendant had the requisite intent during the attack. *Id.,* 392 Pa.Super. at 278, 573 A.2d at 1231–1232. Here, Rightley professed that "no one does this to me and lives," and then bludgeoned the victim to the point where he suffered injuries sufficient to hospitalize him for three days. These circumstances are amply sufficient to allow a factfinder to infer that Rightley intended to cause serious bodily injury to the victim. The mere fact that defendant could have employed his "instrumentality" more effectively, as the trial court intimates, does not preclude this finding.

The trial judge's order granting Rightley's motion for an arrest of judgment is reversed. The matter is remanded for sentencing. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.