POPOVICH, Judge:
 

 This consolidated appeal is from the order of the Court of Common Pleas of Lycoming County, which denied appellants’ motions to vacate judgments of sentence and dismiss criminal informations. The court also denied appellants’ motion to disqualify the District Attorney of Lycoming County from further involvement in their cases. Upon review of the record, we find that the actions of the lower court were proper.
 

 Herein, appellants contend that the lower court erred in denying their motions to vacate judgments of sentence and dismiss criminal indictments and their motion for disqualification of the Lycoming County District Attorney. Appellants submit that the District Attorney caused evidence which may have established their innocence to be totally consumed in a testing procedure which was unnecessary and not contemplated by the agreement between the Commonwealth and the defense. Thus, appellants, citing
 
 Commonwealth v. Smith,
 
 532 Pa. 177, 615 A.2d 321 (1992), argue that the double jeopardy clause of the Pennsylvania Constitution bars retrial because of the District Attorney’s misconduct. Appellants also argue, in the alternative, that the District Attorney’s conduct was sufficiently egregious to warrant his disqualification from further prosecution of their cases.
 

 In
 
 Smith, supra,
 
 our Supreme Court set forth the standard to be applied when .determining whether the double jeopardy clause of the Pennsylvania Constitution bars reprosecution of
 
 *459
 
 a defendant following a finding of prosecutorial misconduct. Therein, Mr. Justice Flaherty, for the unanimous court, wrote:
 

 We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.
 

 Smith,
 
 532 Pa. at 185, 615 A.2d at 325.
 
 See also, Commonwealth v. Manchas,
 
 430 Pa.Super. 63, 78-79, 633 A.2d 618, 626 (1993);
 
 Commonwealth v. Rightley,
 
 421 Pa.Super. 270, 279, 617 A.2d 1289, 1293-1294 (1992). Therefore, the question we presently face is whether the District Attorney of Lycoming County intentionally performed DNA testing on blood, hair and tissue samples in a manner which could not obtain the desired results and which was designed to consume the samples so that no evidence would remain for appellant to test in the manner of their choosing.
 

 A review of the record reveals the following: On February 19, 1988, appellants were convicted of rape and related offenses. On June 29,1988, Jeffrey L. Francis was sentenced to a period of incarceration of not less than eight nor more than sixteen years. Charles S. Nihart and Jerry L. Francis were sentenced to terms of confinement of not less than four nor more than eight years. Direct appeals were filed, and we affirmed their judgments of sentence on March 12, 1990.
 
 See, Commonwealth v. Jeffrey L. Francis,
 
 499 HBG 1988;
 
 Commonwealth v. Nihart,
 
 498 HBG 1988;
 
 Commonwealth v. Jerry L. Francis,
 
 515 HBG 1988.
 

 On August 3, 1990, appellants filed petitions pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. § 9541
 
 et seq.,
 
 alleging ineffective assistance of trial counsel. Shortly thereafter, appellants petitioned the court to be allowed to inspect the evidence held by the Commonwealth and to perform genetic testing on the pants worn by the victim at the time of the rape in an effort to find exculpatory evidence. Appellants’ request to inspect and test the evidence was denied on December 24,
 
 *460
 
 1990. Following a hearing, the petitions for post-conviction relief were also denied on June 19,1991. Timely appeals from the denial of their PCRA petitions were filed and docketed in the Superior Court.
 

 While those appeals were pending before this court, appellants filed a motion in the lower court requesting a new trial on the ground of after-discovered evidence. Pursuant to a stipulation between appellants and the Commonwealth, we entered an order on April 8, 1992, remanding the matter for an evidentiary hearing. On May 15, 1992, a hearing on the matter was scheduled. However, the District Attorney proposed that the motion for after-discovered evidence be held in abeyance pending scientific testing, i.e., DNA genetic fingerprinting, to determine whether appellants could be excluded as the rapists. All parties agreed in principle that PCR-DNA testing would be performed by an impartial laboratory in a manner which would protect against possible tampering and would later permit either party to have an independent test performed if necessary. The District Attorney stated that if the testing established that
 
 none
 
 of the three appellants could have been involved in the rape, then he would
 
 nol pros
 
 all charges. The appellants were then released on bail pending the outcome of the tests. See, N.T., 5/15/92, pp. 2-5.
 

 Defense counsel and the District Attorney later agreed that the appellant’s blood samples and the victim’s blood sample, along with the evidence gathered at the time of the rape including the victim’s clothing, hair samples and tissue samples, were to be sent to CBR Laboratories, Inc., in Boston, Massachusetts, for PCR-DNA analysis. Steps were taken to insure the integrity of the samples and impartiality of the testing. However, during the initial phase of the testing, the defense was unable to communicate with Dr. David H. Bing of CBR Laboratories, since the District Attorney had instructed Dr. Bing not to discuss the testing with anyone but him. Later, at the lower court’s direction, defense counsel was provided access to Dr. Bing who assured defense counsel that
 
 *461
 
 PCR-DNA testing would not consume all of the available samples in case a second test was desired.
 

 On August 17, 1992, Dr. Bing prepared a report of the results of his PCR-DNA test. The test revealed that Charles Nihart could not be excluded as a possible “donor” of the DNA included in the vaginal smear taken from the victim after the rape. Consequently, the Commonwealth moved to revoke appellants’ bail. The lower court continued bail to allow for additional testing by the defense.
 

 In September of 1992, the District Attorney and a Lycoming County Detective travelled to CBR Laboratories in Boston without notifying the defense. While defense counsel speculates that something untoward might have occurred during this visit, no evidence of impropriety was offered regarding the trip. In fact, as found by the lower court, the Commonwealth offered a reasonable explanation for the trip, i.e., the District Attorney wanted to learn more about the test results and any other tests which could be performed. N.T., 12/16/94, pp. 25, 63.
 

 The evidence was then sent to defense expert Dr. Michael Baird at LIFECODES Corporation in Stamford, Connecticut. The report from Dr. Michael L. Baird and Richard Cunningham of LIFECODES indicated that there was an insufficient amount of human DNA in the samples from the rape kit to perform either RFLP-DNA analysis or D1S80-DNA testing via PCR amplification.
 

 Appellants now argue that they were impermissibly prejudiced by the Commonwealth when it had CBR Laboratories perform PCR-DNA testing since that test could not reveal the type of results envisioned by the parties’ agreement. It is undisputed that at the hearing on May 15, 1992, the District Attorney, the defense and the judge all anticipated that DNA “finger-printing” would be performed, and the result of that test would conclusively reveal whether appellants were
 
 not
 
 involved in the rape. N.T., 5/15/92, p. 5; N.T., 12/16/92, pp. 7-8. Despite the fact that defense counsel specifically agreed to PCR-DNA testing on-the-record, N.T., 5/15/92, p. 3, appel
 
 *462
 
 lants assert that PCR-DNA testing was not the type of test envisioned by the parties’ agreement. See also, Order of Court, 5/15/92.
 

 Genetic “finger-printing” is commonly obtained via the RFLP test (Restriction fragment length polymorphism test), and the RFLP test can conclusively prove that two DNA samples came from two different sources.
 
 See, Commonwealth v. Crews,
 
 536 Pa. 508, 640 A.2d 395 (1994); see also, N.T., 12/16/92, p. 4. Instantly, the parties attempted to have a RFLP-DNA test performed as early as December of 1987. However, they were informed by Cellmark Diagnostic Laboratories that there was not sufficient genetic material in the rape kit samples or on the victim’s clothing to reach any conclusion. N.T., 12/16/94, p. 4.
 

 On the other hand, the PCR-DNA test (Polymer chain reaction test) is used when there is only a small quantity of .DNA in the sample. The PCR-DNA test amplifies an otherwise insufficient amount of genetic material and enables some information to be gleaned therefrom. Instantly, PCR analysis was performed using the Perkin Elmer HLA-DQ alpha Amphitype Kit which tests for the presence of six possible alleles. The results of the PCR/HLA-DQ test place the subject in one or more of twenty-one genotypes. The test revealed that Charles Nihart’s sample matched the male lysate taken from the victim’s vaginal smear, as would between 10.4% and 13.2% of the Caucasian population. In addition, the PCR amplification method can be used to study another series of critical alleles known as D1S80. Although the record is unclear, it appears that genetic “fingerprinting” results may be possible with the D1S80 test after PCR amplification.
 
 See generally,
 
 N.T., 12/16/92, pp. 2-59; Letter of 8/27/92 from Dr. Baird of LIFECODES to Donna J. Clemente explaining results of CBR Laboratories tests; Letter of 8/17/92 from Dr. Bing of CBR Laboratories setting forth test results; Letter of 10/27/92 from Richard Cunningham of LIFECODES setting forth test results. Appellants assert the D1S80 test should
 
 *463
 
 have been performed originally as it reveals a “fingerprinting” result as opposed to a genotype result.
 

 After the hearings held on December 16 and 18, 1992, the lower court determined that appellants failed to establish that they were intentionally prejudiced by the DNA testing method and procedures and that the District Attorney’s actions were not sufficiently improper to warrant disqualification. The court also determined that the after-discovered evidence warranted the grant of a new trial. Appellants then filed these appeals which submits that the double jeopardy clause of the Pennsylvania Constitution prohibits their retrial.
 
 [1]
 

 Upon review of the record, we cannot conclude that the prosecution’s actions in this case were deliberately undertaken to prejudice appellant’s case, and, therefore, double jeopardy does not bar retrial of appellants.
 
 Smith, supra.
 
 Further, although we agree with the lower court that the Commonwealth violated the tenor of the parties’ agreement on at least two separate occasions, e.g., when the defense was initially denied access to CBR Laboratories and when the prosecution travelled to CBR Laboratories without advising defense counsel, we also agree with the court conclusion that such acts were not so egregious as to warrant disqualification and that they did not prejudice appellants.
 

 Instantly, it was not prosecutorial misconduct which caused the samples to be subjected to and consumed in a genetic grouping test via PCR-DNA amplification. The record is quite clear that all parties agreed to PCR-DNA testing at the hearing on May 15, 1992. The problem, as the lower court correctly noted, was that the parties were not sufficiently educated regarding the various types of DNA testing available at the time they decided to go ahead with the PCR analysis. N.T., 8/28/92, p. 7. Simply put, no one realized until it was too late that the PCR-DNA test would not provide the desired result of genetic “fingerprinting.” N.T., 12/16/92, pp. 7-8, 22,
 
 *464
 
 40. In addition, no one was even aware of the D1S80 test which could possibly provide “fingerprinting” results until
 
 after
 
 the PCR-DNA analysis had been performed. N.T., 12/16/92, pp. 24-25. Thus, it is incorrect to characterize the District Attorney’s actions as misconduct, much less misconduct which was intentionally designed to prejudice appellants ability to receive a fair retrial.
 
 [2]
 

 In sum, we find that double jeopardy does not bar retrial of appellants. The protections of the Pennsylvania Constitution, as envisioned by
 
 Smith, supra,
 
 clearly are inapplicable unless there is prosecutorial misconduct deliberately aimed at denying a defendant a fair trial. Presently, the record does not support a finding of prosecutorial misconduct rising to such a level. Rather, the record does reveal an unfortunate misunderstanding of the highly complicated field of genetic testing by the District Attorney, defense counsel and the court which caused them to agree upon a test which could not provide the desired “fingerprinting” type of result, assuming such a result could even have been obtained by another method.
 

 Order affirmed. Case remanded for trial.
 

 [1]
 

 . We note that the Commonwealth also filed appeals from the order granting a new trial. However, those appeals were quashed by this court.
 

 [2]
 

 . Further, we note that appellants cannot establish that there would have been sufficient quantities of genetic materials in the samples to perform a D1S80 test if the PCR-DNA genetic grouping test had not been performed first. N.T., 12/16/92, pp. 28, 60. In addition, it should be noted that no appellate court of this Commonwealth has ruled upon whether genetic testing performed via any type of PCR amplification is admissible.
 
 See, Crews, supra, citing, Frye v. United States,
 
 54 App.D.C. 46, 293 F. 1013, 1014 (1923) (performing
 
 Frye
 
 analysis for standard DNA testing without amplification).