J-S55006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUYDEEM JAMALL HAWKINS | : | |
| | : | |
| Appellant | : | No. 447 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 11, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000215-2019

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                 **FILED:  May 11, 2021**

Quydeem Jamall Hawkins appeals from the judgment of sentence of life imprisonment imposed after a jury convicted him of assault by life prisoner, assault by prisoner, aggravated assault, simple assault, recklessly endangering another person ("REAP"), and disorderly conduct, and the trial court convicted him of summary harassment.  We affirm.

On August 20, 2018, while serving a life sentence at SCI Fayette for the 2013 murder of Khaalid Boyd, Appellant participated in a prison fight in the facility's 300-inmate dining hall.[1]  He was observed wielding a dining tray and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As the parties stipulated that Appellant "is an inmate incarcerated for a life sentence that has not been commuted," the certified record does not reveal the details of the conviction that led to the imposition of the life sentence.  We previously identified the victim in our memorandum affirming the murder conviction.  ***See Commonwealth v. Hawkins***, 144 A.3d 199 (Pa.Super. 2016) (unpublished memorandum at 1).

swinging it at other inmates. Several correctional officers responded to the scuffle, but Appellant continued to be aggressive and grappled with Officer William Pletcher, Jr., who was the first officer on the scene. Sergeant David Zebrowski came to Officer Pletcher's assistance and while the two guards attempted to subdue the prisoner, Appellant struck Sergeant Zebrowski on the head with a weapon fashioned from a plastic dining cup that had been melted and sharpened to a point. The blow to Sergeant Zebrowski's head opened a wound that required five sutures to close and left him scarred.

Additional officers arrived and eventually restrained Appellant. They seized the hand-crafted weapon that is commonly referred to as a prison shank. Officer Andrew Jennings was among the officers who responded to the fracas. As he helped escort Appellant to the medical unit, Appellant spit on Officer Jennings's arm.

Based on the foregoing events, the Commonwealth charged Appellant with five counts of assault-related offenses and disorderly conduct in relation to Sergeant Zebrowski and one count each of aggravated harassment and disorderly conduct stemming from his interaction with Officer Jennings. At the subsequent jury trial, during which Appellant was removed due to his disruptive outbursts, the Commonwealth presented, *inter alia*, the surveillance video depicting the assault and the testimony of Sergeant Zebrowski, Officer Pletcher, and Officer Jennings. Appellant did not present any evidence.

The jury convicted Appellant of the six offenses relating to Sergeant Zebrowski and acquitted him of aggravated harassment and disorderly

conduct related to the spitting incident. As noted, the trial court convicted Appellant of summary harassment.

On December 11, 2019, the trial court imposed the statutorily mandated sentence of life imprisonment for aggravated assault by a life prisoner.[2] The sentence was imposed concurrent with the life sentence that Appellant was currently serving. No further penalty was imposed on the remaining conviction. The trial court permitted an appeal *nunc pro tunc*. Appellant complied with the ensuing order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Appellant presents six issues for our review:

> 1. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of assault by life prisoner.
>
> 2. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of assault by prisoner.
>
> 3. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of aggravated assault.
>
> 4. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of simple assault.

---

[2] The court initially imposed ten to twenty years of incarceration for assault by life prisoner; however, following the Commonwealth's post-trial motion, the court vacated that sentence and imposed a second term of life imprisonment, which is the mandatory penalty for that offense. **See** 18 Pa.C.S. § 2704 ("[T]he penalty for which shall be the same as the penalty for murder of the second degree.").

5. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of recklessly endangering another person.

6. Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of disorderly conduct.

Appellant's brief at 4-5 (unnecessary capitalization omitted).

We apply the following standard of review of Appellant's assertion that the evidence was insufficient to sustain the verdict against him:

[W]e examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Lloyd***, 151 A.3d 662, 664 (Pa.Super. 2016).

Appellant's first five issues all relate to the necessary *mens rea* for the respective offenses. Stated plainly, he argues that the Commonwealth failed to adduce evidence to demonstrate beyond a reasonable doubt that he possessed the necessary intent to commit the various forms of assault, REAP, and disorderly conduct relating to Sergeant Zebrowski. As to all but the disorderly conduct conviction, he recycles a single argument, *i.e.*, that he struck Sergeant Zebrowski unintentionally as a consequence of "being tackled by several officers at once and being pushed backwards." Appellant's brief at 10. He attempts to support this contention by highlighting that the blow did not prevent the officers from restraining him, that Sergeant Zebrowski only become cognizant of the injury when he observed the blood, and "there was

- 4 -

no evidence or testimony of record that Appellant voluntarily moved his hand down to strike the victim[.]" *Id*. The common thread among all of Appellant's challenges to the sufficiency of the evidence supporting the assault convictions is that assault requires a voluntary movement that is intentional, knowing, or reckless, an element that he asserts is missing in this case. *Id*. For the following reasons, we disagree.

First, we observe that Appellant's references to the effects of the assault on Sergeant Zebrowski or the officers' ability to restrain Appellant are wholly irrelevant to the determination regarding whether the Commonwealth established the necessary element of intent. Moreover, in contrast to Appellant's contentions, the certified record supports the inference that Appellant acted with volition.

In order to convict Appellant of assault by life prisoner, assault by prisoner[3], aggravated assault, simple assault, and REAP, the Commonwealth was required to established beyond a reasonable doubt that, *inter alia*, Appellant acted intentionally, knowingly or recklessly. *See* 18 Pa.C.S. § 2702(a) **Aggravated assault** ("attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life");18 Pa.C.S. § 2301 **Simple assault** ("attempts to cause or intentionally,

---

[3] When committed against a correctional officer, assault by prisoner, is an assault with a deadly weapon or instrument, or by any means or force likely to produce bodily injury. *See* 18 Pa.C.S. § 2703(a)(1)(ii).

knowingly or recklessly causes bodily injury to another"); 18 Pa.C.S. § 2705 **REAP** ("A person commits [REAP] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.").

The integral component of assault by life prisoner is that the prisoner-assailant committed aggravated assault with a deadly weapon or instrument. A person is guilty of that central offense if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under the circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). The Pennsylvania Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Use of a deadly weapon on a vital part of the body is sufficient to establish intent to cause serious bodily harm. *Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa.Super. 1991).

REAP and simple assault are lesser-included offenses of aggravated assault, and evidence sufficient to prove aggravated assault is sufficient to prove those offenses as well. *See Commonwealth v. Brown*, 605 A.2d 429, 432 (Pa.Super. 1992) (elements of REAP and simple assault are met by a conviction for aggravated assault).

In rejecting Appellant's argument, the trial court explained as follows:

Here, the prison shank that [Appellant] used to strike Sergeant Zebrowski was clearly a deadly weapon. The way in which the shank was made-formed by melting a dining hall cup to a sharp point and then adding cloth around the handle-also shows that [Appellant] premeditated an assault with such instrument. Bringing the shank with him into the dining hall is further evidence that Mr. Hawkins planned an assault. [Appellant] then in fact used that weapon to strike Sergeant Zebrowski in the head after being involved in a fight with another inmate. Although Sergeant Zebrowski's injury did not itself constitute a serious bodily injury, an Aggravated Assault only requires that an attempt was made to cause such an injury. Because [Appellant] used a deadly weapon on a vital part of Sergeant Zebrowski's body, it was proper for the jury to conclude that Mr. Hawkins intended to commit the Aggravated Assault-and therefore Assault by a Life Prisoner-on Sergeant Zebrowski.

Trial Court Opinion, 6/1/20, at 6.

The certified record supports the trial court's factual findings and legal rationale. During the jury trial, Pennsylvania State Trooper Melinda Churney testified about the criminal investigation of the assault. She described the collection of evidence, including the weapon that she identified as a "shank" and described as "a six and a half inch melted dining hall cup which is sharpened to a point with a cloth handle." N.T., 10/9/19, at 82. Similarly, Corrections Officer Casey Morrison described the weapon that was confiscated following the assault as "a plastic shank with a cloth handle wrapped around it." *Id*. at 77. Officer Morrison further explained that, it was "an inmate dining hall cup [that was] melt[ed] down and then mold[ed] . . . into a sharp . . . pointed object[.]" *Id*. at 79. The officer continued, "they will sharpen it down on the floor [or] anything they can kind of rub it against to get it to a point." *Id*.

Sergeant Zebrowski, the victim, has fifteen and one-half years of experience as a correctional officer at SCI Fayette. *Id*. at 54. He testified that he first observed the shank, which he correctly assumed to be a weapon, in Appellant's right hand while Appellant was grappling with Officer Pletcher. *Id*. 55-57. As Sergeant Zebrowski joined the fray, Appellant hit him on the right side of the forehead with the shank. *Id.* at 56. After securing Appellant, Sergeant Zebrowski discovered that he was bleeding from the area where he had been struck by Appellant. *Id*. Sergeant Zebrowski was transported to an urgent care facility in Uniontown, Pennsylvania, where physicians used five sutures to close the wound, which left him scarred. *Id*. at 59.

While it is plausible that Appellant inadvertently slashed at Sergeant Zebrowski's face with the knife-like shank that he brandished during his scuffle with the correctional officers, the jury, as the ultimate arbiter of fact, flatly rejected that proposition. Instead, the jury credited the foregoing evidence favoring the inference that Appellant attempted to injure Sergeant Zebrowski by striking him in the head with a sharp weapon. Although the resulting injury did not prove to be life-threatening, the fact that Appellant did not wield the shank more effectively does not negate the inference that it was intended to cause serious bodily injury. *See Commonwealth v. Rightley*, 617 A.2d 1289, 1296 (Pa.Super. 1992) ("The mere fact that defendant could have employed his 'instrumentality' more effectively, as the trial court intimates, does not preclude" factfinder from inferring that he intended to cause serious bodily injury.); *Nichols*, *supra* at 184 (use of deadly weapon on vital part of

body is sufficient to establish intent to cause serious bodily harm). Hence, when viewed in a light most favorable to the Commonwealth as the verdict winner, the foregoing evidence was sufficient to satisfy the *mens rea* for aggravated assault—attempts to cause serious bodily injury, and therefore the evidence was legally sufficient to convict Appellant of assault by life prisoner, which subsumes aggravated assault. **See** 18 Pa.C.S. § 2704 (a life prisoner "who commits an aggravated assault with a deadly weapon or instrument upon another, or by any means of force likely to produce serious bodily injury, is guilty of [assault by life prisoner]").

Similarly, since the elements of simple assault and REAP are met by a conviction for aggravated assault, the instant evidence also supports those convictions. **See Brown**, **supra** at 432. In addition, Appellant's violent behavior toward Sergeant Zebrowski also constitutes assault by prisoner. **Id**. at 431-32 ("flinging fecal matter into the face of a prison guard . . . constitutes an assault by a means or force likely to produce serious bodily injury" that supports conviction for assault by prisoner).

As to Appellant's final argument, which concerns the sufficiency of the evidence supporting the disorderly conduct verdict, Appellant asserts that the Commonwealth failed to establish that "he intended to cause public inconvenience, annoyance or alarm, or that he recklessly created a risk of a hazardous or physically offensive condition." Appellant's brief at 13. The familiar refrain underlying this argument is that Appellant was not in control

of the situation when he participated in the prison altercation and then assaulted Sergeant Zebrowski. *Id*. Again, we disagree.

The Pennsylvania Crimes Code provides,

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).

It is beyond cavil that the foregoing evidence presented by Sergeant Zebrowski and Officer Pletcher established that Appellant engaged in fighting or violent and tumultuous behavior and created a hazardous condition by acts that served no legitimate purpose. In summary, during the ordeal, Appellant fought other inmates in a crowded prison dining hall, wrestled with Officer Pletcher as the officer attempted to maintain order, and cut Sergeant Zebrowski's head with a prison shank. This evidence supports the jury's finding that Appellant either 1) intended to cause public inconvenience, annoyance or alarm; 2) recklessly created a risk of triggering one or more of those conditions; or 3) recklessly risked creating a hazardous or physically offensive condition through actions that serve no legitimate purpose. *See*

*Commonwealth v. Williams*, 574 A.2d 1161, 1164 (Pa. Super. 1990) (explaining, "hazardous condition" involves danger or risk of potential injury and "physically offensive condition" encompasses direct assaults on physical senses); *Commonwealth v. Roth*, 531 A.2d 1133, 1137 (Pa.Super. 1987) ("When Appellants proceeded to disrupt the Church services, albeit peaceably, they in reality engendered a 'hazardous' condition. Appellant's conduct of moving towards the Church's property certainly created a dangerous situation in which altercations between the demonstrators and Church members could have occurred."). Hence, we reject Appellant's assertion that the Commonwealth failed to establish the *mens rea* for disorderly conduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2021

- 11 -